## JACKSON et al. v. WARD.

No 15447—Opinion Filed June 30, 1925.

**1. Receivers—Right to in Action for Possession of Land.**

In an action for possession of real estate, where the plaintiff in such action makes application for the appointment of a receiver to take charge of the property pending the litigation, it is incumbent upon such plaintiff to bring himself within some statutory provision authorizing the appointment of a receiver, or to show that it is reasonably probable that he will succeed in establishing his rights over the defendant in a final trial, before a receiver should be appointed to take charge of, manage, and collect rents upon the property involved in the litigation.

**2. Same—Receivership Held Improper.**

Record examined, and held, to not support the order and judgment of the trial court appointing a receiver pending the litigation; and held that the judgment should be reversed and remanded to the district court of Carter county, with directions to the trial court to vacate the appointment and discharge the receiver.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Carter County; Asa E. Walden, Judge.

Proceeding by Ambrose Ward against S. B. Jackson and another for appointment of a receiver pending litigation. Receiver appointed; and from an order and judgment of the district court overruling and denying a motion to vacate the order of appointment, S. B. Jackson and I. C. Jackson appeal. Reversed and remanded, with directions.

Sigler & Jackson and R. A. Howard, for plaintiffs in error.

Johnson & McGill, for defendant in error.

Opinion by SHACKELFORD, C. This is an appeal prosecuted by S. B. Jackson and I. C. Jackson from an order and judgment of the district court of Carter county, overruling a motion to vacate and set aside an order appointing a receiver to take charge of and collect rents upon certain property in Carter county, involved in a proceeding brought by Ambrose Ward; the receiver having been appointed upon the application of the said Ambrose Ward.

The facts, out of which the proceeding for the appointment of a receiver grew, are about the following: On the 24th day of May, 1921, Errett Dunlap and Eula V. Dunlap executed to B. F. Ward, guardian of Ambrose Ward, then a minor, a real estate mortgage covering certain lands in Carter county, about 390 acres, to secure the payment of $20,000, money loaned, and payable in one year from date, with interest at 8 per cent. per annum. The Dunlaps defaulted in making payment, and a foreclosure suit was brought and prosecuted to judgment by the mortgagee against the mortgagors, and a foreclosure sale had, at which the mortgagee bought the land covered by the mortgage. The sale was confirmed and deed executed in favor of the mortgagee. The vendee procured certified copies of the order of confirmation and deed, and placed them in the hands of the sheriff, and sought to have the sheriff put him in possession of the land. It seems that the officer and the vendee found S. B. Jackson and I. C. Jackson in possession of the land, claiming some right therein, and they refused to vacate. Thereupon Ambrose Ward brought a possessory action against S. B. Jackson and I. C. Jackson for possession of the land, describing it. He deraigned his title through the mortgage foreclosure sale above referred to, and attached copy of the sheriff's deed to his petition. He alleges

that the defendants are in possession, claiming some interest, but that such claim is a fictitious and fraudulent one; and defendants have no right of possession in or to the land. He then alleges that over 200 acres of the land is in a state of cultivation, 40 acres in peach, plum and pear orchard, and 140 acres in pasture, and alleges that defendants are committing waste, and refuse to give possession; and are insolvent; that the use of the land is worth $2,500; "that a receiver should be appointed herein to take charge of said premises and collect the rents and profits therefrom." The prayer is that a receiver be appointed to take charge of the property and manage it and collect the rents; and for possession of the land, and for damages in the sum of $2,500, and for other relief.

A second cause of action is stated in the petition, in which it is alleged that the defendants claim to hold a lease contract covering the land, executed by Errett Dunlap and Eula V. Dunlap, the former owners, "but that the claim of said defendants under said contract is junior and inferior to the right of the plaintiff herein in said property." It is then alleged that the property did not bring an amount equal to plaintiff's mortgage debt on the mortgage foreclosure sale, and he is entitled to the rents; but defendants are depriving him of the rents and are injuring the crops by pasturing, etc., to plaintiff's damage in the sum of $2,500, and are insolvent; "and plaintiff is entitled to the appointment of a receiver to take charge of said premises and rent the same out and collect the rents and profits therefrom, pending the litigation herein." The prayer is substantially the same as that following the first cause of action. The suit was filed on the 12th of May, 1924, and on the 13th of May, 1924, notice was given the defendants that the plaintiff would apply to the court for the appointment of a receiver on the 27th of May, 1924. On that date the defendants filed a demurrer to the petition, on the ground that it does not state facts sufficient to entitle the plaintiff to the relief prayed for. The demurrer was overruled, and defendants answered (1) by general denial, and (2) that they procured the lease on the land from the Dunlaps on the 20th of December, 1920, running for a term of five years from January 1, 1921, and went into possession under the lease, and the plaintiff took the mortgage with full knowledge and notice of the defendants' rights; that these defendants were not made parties to the foreclosure action, and hence are not bound by the judg-

ment in that action. In the prayer they asked that a receiver be not appointed. The plaintiff replied to the answer, that if any such lease was ever made, it was not placed of record; and the lessee was not in possession at the time the mortgage was executed; and further that if any such lease contract was ever made it was merged into a subsequent contract made between the Dunlaps and the defendants by which what was known as Palnud Farms, a corporation, was organized, and the lease contract became the property of the corporation, and was canceled by mutual consent, and the corporation ceased to do business or have possession of the farms after the 1st of January, 1924.

Such were the pleadings and issues made on which the cause was presented to the court for the appointment of a receiver. The application for appointment of a receiver was presented on the 27th of May, 1924, evidence taken before the court, the contentions of the plaintiff sustained, and a receiver appointed to take charge of and manage the property involved, and collect the rents pending the final hearing and determination of the case. The defendants filed a motion to vacate and set aside the order appointing the receiver on the grounds that the facts pleaded and proven do not justify or authorize the appointment of a receiver pending the litigation. The motion was overruled and defendants appeal and the whole record is before the Supreme Court for review. The assignments of error are presented under two propositions:

(1) The court erred in appointing a receiver on the showing made by the plaintiff.

(2) The court erred in overruling the motion to vacate the appointment of a receiver.

It seems that the one question presented here is whether or not the appointment of a receiver is justified by the record. It seems that the matter to be gotten at is, Who has the prior right in the property, the plaintiff on the one hand, under his mortgage which finally resulted in his receiving the sheriff's deed, or the defendants on the other hand, under their leasehold, or if the defendants had abandoned their rights under the lease? Both parties trace their rights back to the Dunlaps as the source of such rights. Dunlap was the owner of the property, and it was he who executed both the lease and the mortgage, and

both instruments purport to convey rights in the property involved. The lease included more land, but seems to include all the land covered by the mortgage. The lease was executed on the 20th, of December, 1920, and by its express terms was to run from January 1, 1921, for a term of five years; and acknowledged receipt of $2,-500 for the rentals for the full term. The mortgage was executed on the 24th of May, 1921, quite some time after the lease took effect under its express terms. If prior rights are to be determined by the dates of the instruments, under which the respective parties claim, there can be no doubt but that the defendants have the better of the argument, since their lease bears the prior date. If the plaintiff has the prior right, it must be based on something besides the dates of the instruments. So, the contention is presented that the lease was not recorded, and, in itself, furnished no notice of its execution at the time the mortgage was accepted as a security for the loan. This point is conceded by the defendants. The lease of the defendants is not attacked in either the petition of the plaintiff or his reply, as being fraudulently made in an effort upon the part of the parties thereto to overreach and defraud the mortgagee. In the petition the plaintiff alleges that the defendants claim some interest, which claim is fictitious and fraudulent, and in the reply plaintiff alleges that the leasehold was merged in the Palnud Farms corporation, and was abandoned by the defendants, and the corporation had ceased to exist from and after January 1, 1924. The result is that the inception of the lease is not attacked as being a scheme of the parties to defraud the plaintiff, and there is no proof in the record that there was anything wrong about the leasehold granted to defendants by Dunlap, in its inception. The charge that defendants' claim is fictitious and fraudulent must arise upon the alleged fact that the lease had become involved in the organization of the Palnud Farms corporation, and was abandoned; and defendant fictitiously and fraudulently claims to still have rights under the lease. The plaintiff must maintain his right to the relief sought upon one or both of two grounds presented: (1) That defendants had not taken possession of the land under the lease at the time the mortgage was executed; or (2) the lease was embraced in the organization of the Palnud Farms corporation, and whatever rights the defendants had under the lease were surrendered to that corporation, and the corporation had ceased to operate on

January 1, 1924, and any rights under the lease had ceased and determined at that time. The plaintiff's evidence tends to show that on the property is a brick dwelling house as the principal residence, and one witness for the plaintiff, who seemed to know, testified that defendant lived in the brick house from the first of December, 1920. He said, "Mr. Jackson lived there from the 1st of December, 1920; from then on." And, it seems from the evidence that a man by the name of Pulis was a sort of foreman or boss on the property. He testified that he came on the property about the 1st of March, 1921, as a hired hand, and that Jackson was in possession from and after the date he came there. Plaintiff called Dunlap as a witness and he was examined about the lease contract. He testified that it was made at the time of its date, and it had never been revoked. He testified that he owed Jackson $5,000 or $6,000, and Jackson was getting about $4,000 per year salary, and the lease was charged to Jackson against what was coming to him. That the organization of the Palnud Farms corporation had nothing to do with the leasehold granted to the defendant Jackson. He testified on cross-examination, that Jackson (defendant) took possession of the land under the lease, and has been in possession all the time, and there was nothing wrong with the lease contract. Jackson testified for himself, that he made the contract in December, 1920, and took possession of the land early in 1921, under the contract, and has been in possession ever since; and that the lease money was paid in advance for the term of the lease; that the lease money was deducted from money that was coming to him; that in the organization of the Palnud Farms corporation the lease was not put in; and the defendant is still the owner of the lease and in possession; that he knew about the mortgage foreclosure suit and the sale, but was not made a party to that litigation. There is a mass of other tetimony, but the above constitutes the main part of the evidence bearing on the question of defendant's possession at the time the mortgage was given, the bona fides of the lease contract, and whether or not the leasehold of the defendants was merged into the organization of the Palnud Farms corporation. The plaintiff called B. F. Ward, who had been guardian of the plaintiff during his minority, and who took the mortgage under which the plaintiff claims, and examined him as a witness. We learn nothing from him except that he went out and demanded possession for his son, and saw the condition

things were in as to the land in cultivation, growing crops, and the pasturing of the stock, improvemennts, and the rental value of the land.

The plaintiff urges the inadequacy of the amount paid for the lease by the defendant to Dunlap as establishing that the lease was fraudulent and would warrant the trial court in appointing a receiver, and would warrant the court here in upholding the appointment. We will examine and dispose of this contention first. This record is silent as to any rights the plaintiff had in this land at the time the lease was made. So far as we know from anything appearing here, the rights of Dunlap in the land involved were absolute at the time he made the lease to defendant. The amount paid for the lease was a matter entirely for the consideration of Dunlap and the defendant, the parties to the lease. It seems certain that plaintiff was not interested at that time. There is not a single syllable in this record that Dunlap ever had it in mind to mortgage the land at the time he made the lease. It is neither alleged nor proven that the lease made by Dunlap to the defendant was the result of a conspiracy between them to defraud plaintiff, they having in mind at the time that the lease should be withheld from the record, and before plaintiff could know about it, and while ignorant of it, Dunlap should procure the loan from the plaintiff. If the lease was fraudulent, when did the fraud have its inception? And, against whom was the fraud perpetrated? Can it be said that it was an honest transaction when it was made; and then became tainted with fraud afterwards? Both the parties lessor and lessee testified that it was an honest transaction when entered into; and there is no proof to the contrary; and the only complaint made by plaintiff is that defendant bought the lease too cheap. So far as anything appears in this record, Mr. Dunlap had a right to give the lease to Mr. Jackson as a present, at the time he made the lease, if he wanted to. As to prior incumbrancers and creditors, a gift, or inadequacy of price, might smack of fraud and indicate a purpose to overreach the parties with prior rights as against Mr. Dunlap and his property, but could the fact that Mr. Dunlap did not charge Mr. Jackson, in December, 1920, as much for the lease as he should have received for it, affect anybody but the parties to the lease? If anybody was defrauded by the lease at its inception, it must have been Mr. Dunlap—certainly not this plaintiff; and Mr. Dunlap does not complain, but says

it was an honest transaction and was never revoked or changed. If it was an honest transaction at its inception, could the time ever come or circumstances ever arise when the plaintiff could complain that Dunlap did not charge enough rent, and upon that ground alone justify the appointment of a receiver? We are unable to see how this could come about. What difference could it make to plaintiff whether Dunlap got $2,500 or $25,000 in consideration for the lease, since he was not interested in the land or Dunlap personally when the lease was made? The contention made gets to this point: If the defendant had paid all the plaintiff thought should have been paid for the lease, then plaintiff should not be making complaint; but, since Jackson rented the land for less than it was worth, according to the plaintiff's notions, a receiver should be appointed to collect rents from Jackson. We know of no authority, and none has been cited, which would justify the trial court or this court in upholding any such contention. We are not unmindful of what the courts have said about inadequacy of consideration sometimes being a badge of fraud. The plaintiff cites and relies upon Hass v. Gregg, 52 Okla. 51, 152 Pac. 1126. It is elementary that statements and decisions of courts of last resort should be considered in the light of the facts under consideration in making the statements and rendering the decision. In the case cited the facts were that Gregg sold the land involved to F. D Hass for $1,000. F. D. Hass then sold the land to Lee Perry for $800. Then Lee Perry sold the land to Mattie Hass, wife of F. D. Hass, for $950. Then Lee Perry again sold the land (his second sale) to Gregg for $300. Mattie Hass sued Gregg attacking the conveyance made by Lee Perry to him. The final judgment entered here quieted plaintiff's (Mattie Hass') title as against the defendant Gregg. The difference in the facts under consideration here is so great that whatever the court might have said in the Hass-Gregg Case, supra, could not be controlling here. No o'her case is cited.

The trial court made no formal findings of fact, but indicated that the disparity between what Dunlap accepted and Jackson gave for the lease, and what the court thought Dunlap should have required Jackson to give, was so great as to indicate to the trial judge that there was collusion between Dunlap and Jackson, defendant, to overreach plaintiff, a party in no manner interested in the property, or Dunlap personally. at the time the lease was made. There is no charge in the petition or

reply of plaintiff that Dunlap and Jackson had entered into a conspiracy to make a lease upon the land in such a way as to overreach the plaintiff. There is no testimony that any such conspiracy and collusion had been entered into by these men at the time of making the lease, as against the plaintiff, or against anybody. It seems well settled that findings of fraud and collusion to the injury of the complaining party, must be supported by both allegations and proof. In this case there is neither pleading nor proof. If there was fraud perpetrated by, and collusion and conspiracy between, Dunlap and Jackson to defraud plaintiff in making the lease, it must have existed prior to and contemporaneous with making the lease, and must be both alleged and proven. Neither was done nor even intimated. Then it must be said that the conclusion that there was fraud and collusion in the inception of the lease, if such was the conclusion of the trial court, is not supported by either pleading or evidence: and such conclusion is entirely outside the issues made by the pleadings. Then, the appointment of a receiver must be upheld, if at all, on some other theory. The plaintiff alleged that the leasehold of the defendant was merged in the organization of the Palnud Farms corporation, and had been abandoned by the organization; but the evidence offered by the plaintiff refuted any such allegation and all the evidence was to the effect that the lease was never put into the Palnud Farms company and had not been controlled by said company and had not been revoked or changed by the parties to the lease, and had not been abandoned by the defendant.

The plaintiff contends that the defendant was not in possession of the property under the lease at the time the plaintiff's mortgage was taken. The trial court made no special finding as to whether or not the defendant was in possession at the time the mortgage was executed. The trial judge said, however, "I am aware of the fact that our courts have held possession is notice to the world", etc., indicating that in the opinion of the trial judge the evidence shows the defendant was in possession under the lease when the mortgage was executed. If such was the opinion of the trial judge, it was amply justified by the evidence. It seems to be conclusively established by the evidence that defendant was in possession of the property under the lease from and after January 1, 1921. The plaintiff's own evidence established the fact. But the plaintiff insists that the defendant's pos-

session was not exclusive, and therefore whatever possession he had could not avail him against plaintiff. The property consisted of 390 acres of land with considerable improvements and extensive cultivation. Practically all of the witnesses who knew about the situation testified to the fact that rentals on the land were accounted for to the defendant and the tenants were subservient to him. There does not seem to be any rule requiring that defendant occupy every portion of the considerable property in person. The rule recognized by the trial court, and often announced, is that if the defendant was actually in possession of some part of the considerable property, in an open, public, visible manner, it would be sufficient to put the plaintiff's guardian upon inquiry to find out what the defendant's rights were in the property at the time he took the mortgage and made the loan, and if no inquiry was made, still the guardian and plaintiff would be bound by such knowledge as prudent inquiry would have disclosed. The trial judge said, "It is a contract made and kept in secrecy." Considered in the light of the record presented, this statement amounted to saying, "The lease under which the defendant claims was not recorded." We say this for the reason that there is no evidence in the record that in the slighest degree indicates that Dunlap, the lessor, or Jackson, the lessee, kept silent about the lease and its terms when good faith, right doing and the demands of justice and the rules of law would call upon them or either of them to make disclosures concerning the lease and its terms. It could not be said that the contract was being kept secret when the defendant was living in the principal residence house on the property, had made considerable repairs thereon, and had built another house on the land, and was keeping 100 head or more of cattle on the land, and was directing operations on the property and buying seed and directing the planting and collecting rents on the land. Not a witness was called, except the plaintiff and his guardian, but what knew that Jackson, defendant, was out there conducting the operations, at least, for the most part. The lease was not recorded; but we know of no statute or court-made law which requires that the instrument be recorded to be good between the parties; and when the lessor and lessee were operating under it to the extent above indicated, all persons seeking to acquire rights in the property subsequent to the lease, and in the month of May, 1921, when the mortgage was executed, were on their inquiry to find out by what right Jackson was out

there. Did the guardian of plaintiff ever inquire of Dunlap who was on the place and by what right and with what interest? The record is silent upon the matter. It seems that inquiry of Dunlap would not have been sufficient. Did they make inquiry of the defendant? The record is silent, and the testimony of the guardian negatives the idea that he ever made any inquiry of defendant about what his rights in the property were or are. The presumption is that if the plaintiff's guardian had gone upon the land in the early days of May, 1921, he would have found Jackson out there and would have found that Jackson was operating under a lease, and could have and would have learned the terms of that lease. If the inquiry had been made and Jackson had refused to disclose or had misled the guardian of plaintiff, we most likely would have heard of it in this record. We are bound to presume that no inquiry was ever made. We are also bound to presume that prudent inquiry would have disclosed all the facts about the defendant's rights. In view of the evidence we must conclude that there was no secrecy about the lease; and what the court had in mind when talking about a secret contract was the fact that the lease had not been recorded.

It follows, from what has been said, that the plaintiff failed to impeach the validity of the defendant's lease. If the lease is valid, the defendant had a prior and superior right in the property as conveyed by the lease, over the plaintiff. It seems that it was incumbent upon the plaintiff in the receivership proceeding, to make something of a prima facie showing of the invalidity of the lease. In Hardy Oil Co. v. Burnham, 58 Tex. Civ. App. 285, 124 S. W. 221, the rule with reference to appointment of receivers pending litigation is stated as follows:

"Under all the authorities upon this question, both reported cases and statements of the law in text-writers, it seems to be essential to the proper exercise of the power to appoint a receiver in actions for the recovery of real estate, or an interest therein, such as the present one, before final hearing, that the persons seeking such relief must show that they will probably succeed in establishing their right upon a final trial. It is stated in High on Receivers that 'the relief will be granted only when there is a strong probability of recovery'. Such relief is limited, according to Beach on Receivers, to cases where 'the plaintiff's right is so clear that there is reasonable possibility of his success. High on Receivers, Secs. 556, 557, page 543; section 558, p. 545; Beach on Receivers, p. 481; Cofer v. Echer-

son, 6 Iowa. 502; Chicago, etc., v. U. S. Pet. Co., 57 Pa. 85."

To the same effect is Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 128 N. W. 691; Thompson v. Adams, 60 W. Va. 463, 55 S. E. 668; and Sult v. Hochstetter Oil Co., 63 W. Va. 317, 61 S. E. 307. There are many other authorities to the same effect. The rule announced in the above quotation seems to be the generally recognized rule. It is said in some of the cases, and it is insisted here, that the appointment of a receiver pending the litigation is a matter within the sound discretion of the trial court. Perhaps a more exact statement of the rule with reference to the discretion of the trial court in such matters, is that when the party applying for the appointment of a receiver pending the litigation has made a showing entitling him, upon some recognized rule, to have a receiver appointed, the matter is then within the sound discretion of the trial court as to whether a receiver should be appointed, and the appellate court will refuse to interfere. But unless a showing is made by the party making the application, entitling him to have a receiver appointed upon some theory recognized by the court or authorized by statute, the appointment of a receiver is not within the discretion of the trial court, and is in excess of its power and is an abuse of discretion reposed in him.

We have made a careful and painstaking examination of the record presented, and are unable to find any gr und or theory to justify the appointment of a receiver. We think the court erred in appointing the receiver upon the showing made, and should have sustained the motion to vacate the order making the appointment.

We recommend that the judgment be reversed and the cause remanded to the district court of Carter county, with directions to sustain the motion to vacate the appointment, and discharge the receiver.

By the Court: It is so ordered.

Note.—See under (1,2) 34 Cyc. pp. 51 54; 23 R. C. L. 19, 4 R C. L. Supp. 1489.