**STATE ex rel. WARREN et al. v. DOUGLASS, Dist. Judge.**

No. 28848.　Feb. 21, 1939.

Rehearing Denied March 28, 1939.

W. A. Daugherty and John H. Cantrell, for applicant.

A. L. Beckett and Ram Morrison, for respondent.

OSBORN, J. This is an application for a writ of prohibition against Honorable Frank P. Douglass, judge of the district court for the 13th Judicial district, sought by R. B. Warren and Royce Savage, who allege that they are the duly appointed and qualified receivers for the Southwest Company, an Express Trust, appointed by a judge of the district court of Tulsa county, on the 13th day of June, 1938, in an action wherein Warren & Robinson Drilling Company, a corporation, was plaintiff, and the Southwest Company, an Express Trust, and the trustees thereof, were defendants. It is alleged that upon their appointment they went into possession of all of the property of the Southwest Company, an Express Trust, and

4

they took into their possession and were operating certain oil producing properties belonging to said trust in Oklahoma county; that with knowledge of the appointment of said receivers, the respondent on August 22, 1938, without notice to these applicants, in an action wherein Hubert E. Bale was plaintiff and the Southwest Company, an Express Trust, and others were defendants, appointed one F. R. Henson as receiver of said oil properties in Oklahoma county, and that the said F. R. Henson was threatening to interfere with the possession of said property by these receivers, and that there was an intolerable conflict between the jurisdiction of the district court of Tulsa county and the district court of Oklahoma county which this court should prohibit by proper writ; that a special appearance had been made in the district court of Oklahoma county by these receivers challenging the jurisdiction, power, and authority of said court and of its receiver, which challenge had been denied by the district court of Oklahoma county.

It is conceded that the sole question to be determined herein is whether or not the district court of Tulsa county had jurisdiction to appoint said receivers, and that if it be determined that such jurisdiction existed, a writ of prohibition should issue; otherwise, it should be denied.

Looking to the allegations of the petition filed in the district court of Tulsa county, we find that Warren & Robinson Drilling Company alleged that it was a simple contract creditor of the Southwest Company, an Express Trust, by virtue of a certain $30,000 note payable in installments, endorsed by way of further security by W. E. Brown and A. J. Diffie, two of the trustees of said trust, on which default had been made in the payment, and a further note of $9,899.48, executed by said trust and likewise endorsed and likewise defaulted. As a third cause of action the plaintiffs allege that said trust, the Southwest Company, an Express Trust, was insolvent and unable to pay its debts as they matured; that it owned three separate parcels of land in Oklahoma county on which there was one producing well on each tract; that numerous bills for drilling and equipping said wells were unpaid and various parties had mechanics' and materialmen's liens on each of said wells and leases, and that several of said lien claimants were threatening to file foreclosure proceedings to foreclose their respective liens; that although said wells were producing only from 80 to 100 barrels of oil per day, said wells have not been properly completed and are not being properly cared for by reason of lack of funds to properly clean out and operate said wells, and that the trustees are unable to obtain further credit and cannot obtain the necessary funds with which to properly produce said wells; that by proper operation the production of said wells will be greatly increased and that the income will be sufficient to more than pay all creditors in full; that a receiver is necessary in order properly to conserve said property and manage same to produce income which said properties are capable of producing and in order that the claims of creditors and their priority may be determined without excessive cost and fees. The trustees admitted the indebtedness, the default thereof, and their inability by reason of insufficient funds to pay their creditors, and joined in the request for appointment of a receiver. The principal place of business of said trust, the Southwest Company, was at Tulsa and all of the defendants resided within Tulsa county. On oral argument herein it was stated that the indebtedness of the company, both secured and unsecured, exceeded $200,000.

Respondent contends that the allegations of plaintiff's petition for the appointment of a receiver in the district court of Tulsa county are wholly insufficient to invoke the equitable jurisdiction of the court to appoint a receiver in that it is shown that plaintiff is a simple contract creditor who has not procured a judgment; that he has no lien on or interest in said property over which a receiver is sought and that under the provisions of section 773, O. S. 1931, no statutory ground for the appointment of a receiver is contained within the allegations of said petition.

On collateral attack, as is the present proceeding, we are confined to an examination of the allegations of the petition as to the relief sought. Kedney v. Hooker, 144 Okla. 148, 289 P. 1108. But even though the allegations of said petition were imperfect, if they were sufficient to "set the judicial mind in motion," or to "challenge a judicial inquiry," they will be held sufficient to invoke the jurisdiction of the court. Shields v. Coleman, 157 U. S. 168, 15 S. Ct. 570; Utah Ass'n of Credit Men v. Budge (Idaho) 102 P. 390; People's Bonded Trustees v. Wight (Utah) 272 P. 200; Superior Oil Corp. v. Matlock (10th C. C. A.) 47 F.2d 993; Freeman on Judgments, vol. 1, sec. 365; Welch v. Focht (1918) 67 Okla. 275, 171 P. 730; Wagner v. Lucas (1920) 79 Okla. 231, 193 P. 421; McDougal v. Rice (1920) 79 Okla. 303, 193 P. 415; Lindeburg v. Messman (1923) 95 Okla. 64, 218 P. 844; Abraham v. Homer (1924) 102 Okla. 12, 226

P. 45; Fowler v. Marguret Pillsbury General Hospital (1924) 102 Okla. 203, 229 P. 442; Foster v. Focht (1924) 102 Okla. 261, 229 P. 444; Howard v. Duncan (1933) 163 Okla. 142, 21 P.2d 489; Goldsmith v. Owens (1937) 180 Okla. 268, 68 P.2d 849; Cherry v. Goddard (1936) 179 Okla. 158, 64 P.2d 315; Ogilvie v. First Nat. Bank (1937) 179 Okla. 111, 64 P.2d 875; 34 C. J. 560; 15 R. C. L. 864; Black on Judgments, sec. 269; L. R. A. 1916E, 316, case note.

Chapter 16 of the Session Laws of 1919 (sec. 11820, et seq., O. S. 1931), authorized the creation, formation, and operation of express trusts as business enterprises. Section 11823, O. S. 1931, provides:

"Liability to third persons for any act, omission, or obligation of a trustee or trustees of an express trust when acting in such capacity, shall extend to the whole of the trust estate held by such trustee or trustees, or so much thereof as may be necessary to discharge such liability, but no personal liability shall attach to the trustee or the beneficiaries of such trust for any such act, omission or liability."

By section 773, O. S. 1931, a receiver may be appointed:

"First: In an action * * * by a creditor to subject any property or fund to his claim, * * * and where it is shown that the property or fund is in danger of being lost, removed or materially injured. * * * Sixth: In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

High on Receivers (4th Ed.) page 847, section 692:

"The appointment of receivers is frequently necessary in cases of trusts, either express or implied, as against trustees and persons occupying fiduciary relations, and the principles governing this branch of the subject may be appropriately referred to the general jurisdiction of courts of equity over trusts. Strictly speaking, many of the cases in which relief is granted by appointing a receiver over corporations are dependent to a considerable degree upon the doctrine of trusts, the officers of a corporation occupying a fiduciary relation toward its shareholders and creditors, and the abuse of their trust constituting a frequent ground for the interference of equity by a receiver. * * *"

23 R. C. L. sec. 28:

"In order to justify the appointment of a receiver for trust property, there must be either misconduct, waste, mismanagement, misapplication, or improper disposition of the trust fund, or a denial or destruction of the trust estate by the trustee. But where the property, by any of these acts, becomes endangered or placed in a state of insecurity, which due care or conduct would have prevented, it is proper to appoint a receiver for the trust estate, to preserve it from loss, whatever the nature of the plaintiff's right and whatever may be the nature of the property. * * *"

Section 267 of the Restatement of the Law of Trusts is as follows:

"A person to whom the trustee has incurred a liability in the course of the administration of the trust can by a proceeding in equity reach trust property and apply it to the satisfaction of his claim under the circumstances stated in sections 268-271."

In the comment under this section is found the following language:

"4. If it was agreed between him and the trustee that the trustee should not be personally liable upon a contract, but that he should look only to the trust estate, he can by a proceeding in equity reach trust property and apply it to the satisfaction of his claim upon the contract, provided that the contract was properly made by the trustee in the administration of the trust."

Paragraph B, section 267, Restatement of the Law of Trusts, is as follows:

"The remedy of a creditor under the rule stated in this section is by a proceeding in equity against the trustee in his representative capacity to compel the application of the trust property to the payment of his claim. This proceeding can be maintained against the trustee who incurred the liability or against a successor trustee in his representative capacity. If a judgment is given against a trustee in his representative capacity only, the judgment cannot be enforced against him personally."

Section 271 of the Restatement, aforesaid, is as follows:

"If the trustee makes a contract with a third person and the contract provides that the trustee shall not be personally liable upon the contract, but that the third person shall look only to the trust estate, the third person can by a proceeding in equity reach trust property and apply it to the satisfaction of his claim upon the contract, provided that the contract was properly made by the trustee in the administration of the trust."

The petition in the case wherein the plaintiff receivers were appointed alleged that the trust estate was insolvent and in danger of being lost or materially injured by reason of the inability of the trustees to properly operate the properties and because of threatened multiplicity of foreclosure proceedings; that the entire trust property was liable by virtue of statute for the indebtedness contracted by said trustees on behalf of said trust estate, and the trustees, by virtue of

statute, were relieved from any personal liability. Whether the mismanagement of said estate arose through willful misconduct or through mere inability, financial or otherwise, to husband, safeguard, protect, and preserve the property of said trust, is not subject to inquiry on collateral attack, but would be material only in invoking the judicial discretion in the original appointment. We hold that the allegations of the petition were sufficient on collateral attack to sustain the jurisdiction of the district court of Tulsa county in making said appointment under the first and sixth subdivisions of section 773, O. S. 1931. See Ellis v. Panther Oil & Gas Co., 171 Okla. 552, 43 P.2d 423; Cameron v. White, 128 Okla. 251, 262 P. 664. We find nothing in the case of Fleet v. Hooker, 178 Okla. 640, 63 P.2d 988, nor in Oklahoma Fullers Earth Co. v. Evans, 179 Okla. 124, 64 P.2d 899 nor in State v. Prairie Cotton Oil Co., 180 Okla. 608, 71 P.2d 988, which is in conflict with this view.

We have here a striking example of conflict between courts of concurrent jurisdiction. It definitely approaches that intolerable conflict which has often called for the intervention of higher courts by writ of prohibition. Here each court has appointed a receiver covering properties of the business trust. First, the Tulsa county district court appointed a receiver and he took possession of these properties. Thereafter the Oklahoma county district court appointed a receiver and he is attempting to take over certain of the properties from the Tulsa county receiver. Obviously many matters might be presented here on appeal which should not be considered, or should not control, in this proceeding for the relief here sought. We must assume the prior order of the Tulsa county district court is correct until it is challenged here on appeal.

Writ granted.

BAYLESS, C. J., WELCH, V. C. J., and CORN, GIBSON, HURST, and DAVISON, JJ., concur. RILEY and DANNER, JJ., dissent.

RILEY, J. (dissenting). The majority opinion is, in my judgment, based upon a misconception of the rules applicable to the appointment of a receiver for an express trust at the instance of an unsecured simple contract creditor possessing a complete and adequate legal remedy.

In Oklahoma, grounds for the appointment of receivers are prescribed by statute, section 773, O. S. 1931. A court has power to appoint upon grounds and only the

grounds named. Evans, Adm'r, v. Clinton Bank (Ky.) 50 S. W.2d 563, 53 C. J. 38.

In receivership cases, the third element of jurisdiction (power to render the particular judgment) is dependent upon whether the allegations of the petition state a cause of action or set forth grounds upon which the receivership might rest. Kedney v. Hooker, 144 Okla. 148, 289 P. 1108.

In their first two causes of action, Warren & Robinson declare upon past due promissory notes in amounts of $30,000 and $9,899.-43, respectively. Both notes were endorsed (as further security) by W. E. Brown and A. J. Diffie, two of the trustees of the Southwest Company. The third cause of action is for the receivership; it is equitable in its nature and it alleges as grounds only insolvency of the Southwest Company and threatened litigation by various lienholders, which lawful right, as this common creditor views it, will result in detriment to the property of the business trust. It is thought that equity follows the law, but does not obstruct it, and that the view of the majority that pursuit of lawful right by lien claimants will result in restricted finance to the business trust, and consequent underdevelopment or destruction of oil property amounts to mismanagement, is untenable.

Under subdivision 1, sec. 773, supra, and similar statutory provisions, it is customarily held that a common creditor who has no right or interest in or lien upon the property of the debtor is not entitled to the appointment of a receiver. Happily this is so, otherwise the land might be infested with receivers as it is with governmental officials, and at the instance of merchants upon open accounts or a chose in action.

Petitioners contend section 11823, O. S. 1931, providing that liability to third persons for an obligation of a trustee of an express trust shall extend to the whole of the trust estate held by the trustees, creates the requisite right, interest, or lien upon the property of the Southwest Company. This is not a proper construction of that section, and the majority opinion does not so hold. It simply relies upon quotation of the section for whatever that is worth.

At common law the trustee was personally liable to creditors of the trust, and suit would not lie directly against the trust. Only under certain circumstances, such as insolvency of the trustee, could the creditors by an equitable proceeding reach the corpus of the trust. At best this was a clumsy, circuitous route. So by the legislative act, the route was shortened, personal

liability of the trustee was eliminated, and that of the trust estate was supplanted. However, as applied to an ordinary trust as distinguished from an express or business trust this intolerable condition is not so evident. In the latter type there is an obvious need for a convenient procedure by which the assets of the trust may be applied to creditors' obligations. A few states other than Oklahoma have provided this by statute. This is the only effect of section 11823; it does not create a right or interest in or lien upon the property of the trust in favor of an unsecured creditor.

The majority has fallen into error by failing to distinguish between business trusts and ordinary trusts established by will or inter vivos. A business trust is a device for "* * * profit making through the combination of capital contributed by a number of investors. In ordinary trusts the settlor is seldom also the sole or principal beneficiary; in business trusts such is almost invariably the case—the trust res consists of property originally contributed by the beneficiaries themselves." Bogert, Trusts & Trustees, vol. 2, p. 973, sec. 291. The Southwest Company is an express or business trust created and used by entrepreneurs to conduct their oil-producing business. The device has by many been found to be a convenience in limiting liability and responsibility.

Massachusetts has perhaps contributed more toward the development of business trusts than any other state. Their origin there is attributed to the fact that corporations could not be organized for the purpose of developing and dealing in real estate. Since then its use has been greatly extended. See section 11820, O. S. 1931; 2 Bogert, Trusts & Trustees, sec. 292.

In State v. Prairie Cotton Oil Co., 180 Okla. 608, 71 P.2d 988, this court said:

"* * * Aside from the fact that it has a trade name in which it may sue and be sued, it has no rights under the law that an individual does not possess."

The wholesome expression is self-evident of innocence, nothwithstanding that the expression accords with the experience in Massachusetts, where corporations circumvented the law regarding holding of real estate by becoming business trusts. This court has also held that the statute requiring certain information concerning a fictitious partnership be recorded has no application to a business trust because not applicable to "sole traders". General American Oil Co. v. Wagoner Oil & Gas Co., 118 Okla. 183, 247 P. 99. Section 11820, supra, provides

trustees shall conduct the business and any act in relation thereto that an "individual" might do.

It is the duty of this court to look beyond form to substance. History reveals a business trust to be a hybrid sired by business necessity, legalized in Oklahoma by statute, and by some courts erroneously treated as a legitimate child of equity to be clothed and shielded by a chancellor's solicitude for a genuine trust. The error in this would be avoided by such courts if judges would look for the bug under the chip. That bug is receiverships unauthorized by law and not justified by facts alleged, but with the termite proclivities.

At different times business trusts have been treated as corporations, State ex rel. Colvin v. Paine, 137 Wash. 566, 243 P. 2, 247 P. 476, 46 A. L. R. 165; as partnerships in Texas, 37 Yale Law Journal 1103, 1107, note 19; and as individuals in Oklahoma. See citations supra. Their features are tinged with inherited characteristics of each. More accurately, a business trust is an adopted child of uncertain parentage to be granted equitable protection and supervision where the creation and operation of the trust relationship is involved; to be denied such protection where the relationship involved is purely ordinary business intercourse. Outside of the discussed liability feature, in substance a business trust in Oklahoma, where by judicial construction it is a "sole trader" having no rights that an individual does not have except a trade-name in which it may sue and be sued, whereby statutory provision it may do any act in relation to trust property that an individual owning the same might do, is nothing more than a collection of individuals doing business in the same way and for the same purpose as it is so frequently transacted by a sole person. So, as applied to the case at bar, is there any reason why the group should be treated differently as concerning the appointment of a receiver than the individual? Obviously there is none. If this be true, the end of this action is in view, for in the very recent case of Fleet v. Hooker, 178 Okla. 640, 63 P.2d 988, we solemnly and correctly determined that a court was without jurisdiction to appoint a receiver against an individual in a suit by a simple, unsecured contract creditor, who asserts no legal or equitable lien or claim against any specific property of defendant.

The first two causes of action alleged by Warren & Robinson, though against a trust, are simply actions at law on promissory notes and governed by principles applicable to such actions, none of which involve equi-

table relief, legal or equitable lien or claim against specific property of the Southwest Company. The rule stated in Fleet v. Hooker, supra, is sound, controlling, and decisive. The Tulsa county district court had no jurisdiction to appoint the receivers.

The distinction heretofore set forth between business and ordinary trusts is obvious and fundamental. Courts failing to recognize it have fallen into error. The most recent and classic example is the majority opinion herein. It is bottomed almost entirely on citations from the Restatement of the Law of Trusts. The error is obvious when we read vol. 1, ch. 1, sec. 1, page 4, as follows:

"Matters Excluded. A statement of the rules of law relating to the employment of a trust as a device for carrying on **business** is not within the scope of the Restatement of this subject. Although many of the rules applicable to trusts are applied to business trusts, yet many of the rules are not applied, and there are other rules which are applicable only to business trusts. The business trust is a special kind of business association and can best be dealt with in connection with other business associations."

The majority cites Ellis v. Panther Oil & Gas Co., 171 Okla. 552, 43 P.2d 423. Although that opinion, in the realm of judicial dictum, used the unfortunate expression "as to whether plaintiff and the creditors * * * are preferred or common creditors is not material to this appeal." Obviously the plaintiff was a lienholder of some sort, because the second assignment of error was:

"Error in not holding that plaintiff was a common creditor and defendant was the trustee for certain preferred creditors."

Furthermore, the petition alleged sufficient grounds to invoke the court's equitable jurisdiction. Cameron v. White, 128 Okla. 251, 262 P. 664, is also cited, but this case involves a contest between claimants of the trust corpus and not a suit between a creditor and the trustees. It is not authority for the purpose cited.

Even though a business trust be not treated as an individual for the purposes of appointing a receiver, an unsecured simple contract creditor should still have the duty of showing he has some right or interest in or lien upon the property for which a receiver is sought. If such a suitor has no immediate right to interest in or lien upon the corpus, he should reduce his claim to judgment and levy execution, a plain remedy at law excluding equitable relief.

Subdivision 1, sec. 773, supra, governing appointment of a receiver, also specifies a requirement that the property be in danger of being lost, removed, or materially injured. There is no intimation that the property is about to be removed. There is no direct allegation of loss or material injury. It should be borne in mind there is no allegation of loss from misconduct, mismanagement, waste, improper disposition, or destruction of the trust estate by the trustee. The absence of such an allegation is all the more conspicuous in this case in view of the trustees' consent to receivership, a circumstance discussed presently.

In Pomeroy's Equity Jurisprudence (4th Ed.) sec. 1510, it is stated:

"Courts will not interfere with trustee's possession by a receiver unless there is real danger from their misconduct."

In 23 R. C. L. 31, it is stated:

"In order to justify the appointment of a receiver for trust property there must be either misconduct, waste, mismanagement, misapplication, or improper disposition of the trust fund, or a denial or destruction of the trust estate by the trustee. But where the property, by any of these acts, becomes endangered or placed in a state of insecurity, which due care or conduct would have prevented, it is proper to appoint a receiver for the trust estate, to preserve it from loss, whatever may be the nature of the plaintiff's right and whatever may be the nature of the property * * *."

The petition herein is insufficient in that it does not allege, within the meaning of the statute, danger of the property being lost, removed, or materially injured.

In Jackson v. Ward, 111 Okla. 73, 238 P. 429, it was said:

"* * * Unless a showing is made by the party making the application, entitling him to have a receiver appointed upon some theory recognized by the court or authorized by statute, the appointment of a receiver is not within the discretion of the trial court, and is in excess of its powers and is an abuse of discretion reposed in him."

Subdivision 6 of section 773, supra, authorizes appointment of a receiver in cases where receivers have heretofore been appointed by the usages of courts of equity. The right to the appointment of a receiver being equitable in nature, in accordance with the general rule governing the invocation of equitable power, a receiver will not be appointed where there is another safe, adequate, and expedient remedy at law. 53 C. J. 25. Also, if from the allegations of the petition it appears that the plaintiff has a complete and adequate remedy at law, a receiver will not be appointed. 53 C. J. 54.

In the first and second causes of action Warren & Robinson allege that each of the notes sued upon was endorsed as further security by W. E. Brown and A. J. Diffie, two of the trustees of the Southwest Company. They do not allege insolvency of either endorser. In absence of such allegation we must assume the contrary. Warren & Robinson, upon default of the Southwest Company, were entitled to proceed against the endorsers of the two notes. They have a complete and adequate legal remedy on the face of their petition. "An application for the appointment of a receiver must show cause or ground for the appointment." 53 C. J. 53. When the contrary is shown, a fortiori the court has no discretion in the matter, and the appointment of a receiver under such circumstances is in excess of its power.

Though we are here concerned with the question of power to appoint a receiver, both parties have seen fit to discuss the equities of the case. A circumstance in this connection is that the trustees appeared on the same date Warren & Robinson filed their petition and consented to the receivership. Such consent cannot authorize the appointment of a receiver unless the plaintiff's case has some circumstances or factors of equitable cognizance connected with it, such as in instances where plaintiff's legal remedy is not plain, adequate, or complete. Otherwise a simple contract creditor and the debtor might combine to foist on the equity side of the court a pure legal controversy and thereby deprive other creditors of their right to pursue their ordinary remedies provided by law. Clark, Receivers (2d Ed.) vol. 1, p. 226.

It stands admitted that some 68 lienholders with claims aggregating $175,000 are under the law entitled to pursue their remedies now. After the lienholders have pursued their remedies, the plaintiffs in their self-created status of common creditor are entitled to payment then. Plainly put, this record smacks sharply of an attempt by a creditor entitled to enforce his right then to forestall the exercise of legal rights and privileges by preferred creditors entitled to enforce their rights now. And this in addition to the legal remedy against the trustee-endorsers voluntarily abandoned—obviously they may have had financial reasons for consent to the receivership.

The majority opinion states Warren & Robinson alleged there are three separate tracts of land in Oklahoma county, each with one producing well; that said wells were producing from 80 to 100 barrels of oil per day and that said wells have not been properly completed. This is inaccurate. It is actually alleged that there are three tracts, describing them, each with a producing well thereon; that each of the wells (known as the Jackson & Trosper wells) on the two leases last described makes approximately 80 to 100 barrels per day; that the well on the lease first described (known as the Sinopoulo well) has never been properly completed; that said well is estimated to make from 350 to 450 barrels per day, but due to the floating sand condition it chokes up and can be pumped but a few hours at a time; that said well should be shot and thoroughly cleaned out, and if that is done in proper manner, it is estimated the well will produce enough to pay the creditors.

The receivers, Warren and Savage, on January 20, 1939, filed in this action a motion for an order to pay certain operating expenses. Therein it appears that the proceeds of oil runs to the working interest from the Sinopoulo well for the months of August to December, inclusive, is $25,136.86. Proceeds from the Jackson and Trosper wells total only $10,392.96.

This court may take judicial notice of the orders of the Corporation Commission pertaining to proration of oil well production. 15 R. C. L. 1079.

The order of the Corporation Commission shows that those wells producing from the Wilcox sand in the Oklahoma City field are all permitted to produce up to 165 barrels per day, plus a certain percentage, established monthly, of the difference between 165 and the well's potential. The potential of the Sinopoulo well is 270 barrels per day. From August to December, inclusive, the monthly percentages established by the commission were, respectively, as follows: 4%, 5%, 5%, 5% and 6%. It is obvious, therefore, that the Sinopoulo well is now producing about the maximum amount allowed under proration. Granting the allegations that shooting and cleaning the well would increase its production, this would avail the creditors little under the present system of proration. Courts should not encourage or permit the extension or expansion of a defaulting business venture even in the interest of common creditors when it is at the expense of labor and material lien claimants.

The writ of prohibition should be denied.

I am authorized to say Mr. Justice DANNER concurs herein.