2000 OK CIV APP 119

**Verbon SMITH and Hazel Smith, individuals, Appellees,**

v.

**The BAPTIST FOUNDATION OF OKLAHOMA corporation; and The Baptist General Convention of the State of Oklahoma, an Oklahoma corporation, Appellants.**

**No. 93,176.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 15, 2000.

621–622 (Opala, C.J., dissenting).

Patrick O'Hara, Jr., Spradling, Alpern, Friot & Gum, L.L.P., Oklahoma City, OK, for Appellees.

Jack S. Dawson, James A. Scimeca, Miller Dollarhide, Oklahoma City, OK, for Appellant Foundation.

Stephen D. Beam, Weatherford, OK, for Appellant Convention.

James C. Chandler, for Amicae Curiae.

## OPINION

STUBBLEFIELD, J.

¶ 1 This is an appeal from summary judgment voiding a trust. The cause has been assigned to the accelerated docket pursuant to Supreme Court Rule 1.36, 12 O.S. Supp. 1999, ch. 15, app. 1. After a review of the record on appeal and applicable law, we reverse and remand with instructions and for further proceedings.

¶ 2 Plaintiffs Verbon and Hazel Smith filed this action against Defendants Baptist Foundation of Oklahoma and Baptist General Convention of the State of Oklahoma, both of which are nonprofit corporations.[1] They sought a declaratory judgment that an inter vivos irrevocable trust created by Verbon on June 19, 1984, the Verbon Smith Charitable Remainder Unitrust (the Trust), was void as in violation of Oklahoma law. Foundation was the designated trustee under the Trust, and Convention the stated remainder beneficiary.

1. We are told in Foundation's brief that Verbon became incapacitated at some time before the filing of the lawsuit, and was incompetent at the time of filing. Hazel Smith was appointed his

¶ 3 Verbon funded the Trust by deeding to it farmland he owned in Texas, which Foundation sold. The Trust provided that Verbon would receive up to eight percent of the Trust's income during his lifetime, and thereafter, Hazel would receive up to five percent. Upon both of the Smiths' deaths, the remainder would go to Convention.

¶ 4 The Smiths asserted that the trust was void because, at the time it was created, Foundation had no authority to serve as trustee. They sought a declaratory judgment to that effect, plus "damage[s] caused ... as a result of the unlawful agreement." Alternatively, they sought damages for purported breach of fiduciary duty and negligence on the part of Foundation.

¶ 5 Foundation and Convention filed a special appearance and a motion to dismiss for improper venue. The trial court denied that motion. The Smiths then filed a motion for summary judgment, and Foundation and Convention filed responses and motions for partial summary judgment.

¶ 6 The trial court granted the Smiths' motion for summary judgment. In a journal entry of judgment filed May 19, 1999, the trial court declared the Trust void ab initio, and ordered Foundation to return the Trust's corpus (valued at about $500,000) to the Smiths. It also ordered Foundation to pay the Smiths $42,000 in damages, as the difference between what Foundation received for administering the Trust and what a bank would charge as a base amount. The trial court later awarded the Smiths $12,259 in costs. Foundation and Convention appeal. For convenience sake, we shall refer to Defendants collectively as "Foundation" where appropriate.

¶ 7 Summary judgment is proper only in those cases where there is no dispute as to any material fact. *Flanders v. Crane Co.*, 1984 OK 88, ¶ 10, 693 P.2d 602, 605. In the case at bar, the trial court's grant of summary judgment was based on undisputed facts and involved the interpretation of stat-

guardian, and although not apparent from the caption of the case, she brings the suit in Verbon's behalf. These contentions are not contested in the Smiths' answer brief.

utes. Where the facts are not disputed, an appeal presents only a question of law, *Baptist Bldg. Corp. v. Barnes,* 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69, meaning our standard of review of the trial court's decision is de novo. *Weeks v. Cessna Aircraft Co.,* 1994 OK CIV APP 171, ¶ 5, 895 P.2d 731, 733 (approved for publication by order of the Oklahoma Supreme Court). "De novo" means no deference, not necessarily a full rehearing or new factfinding. *Bose Corp. v. Consumers Union of U.S.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■ ¶ 8 A threshold issue is whether the trial court correctly ruled venue is proper in Dewey County. We hold that it is.

¶ 9 Title 12 O.S.1991 § 134, states that an action may be brought against an Oklahoma corporation in, among other places:

the county where the cause of action or some part thereof arose. . . .

Foundation does not dispute the Smiths' assertion that Dewey County is where the Smiths entered into the trust agreement. Therefore, it can be said that the cause of action arose in Dewey County, making venue proper there.

■ ¶ 10 Foundation asserts venue is proper only in Oklahoma County. It refers us to 60 O.S. Supp.1999 § 175.23, which states, in applicable part:

A. The district court shall have original jurisdiction to construe the provisions of any trust instrument; to determine the law applicable thereto; the powers, duties, and liability of trustee; the existence or nonexistence of facts affecting the administration of the trust estate; to require accounting by trustees; to surcharge trustee; and in its discretion to supervise the administration of trusts; and all actions hereunder are declared to be proceedings in rem.

B. The venue of such actions shall be in the county where the trustees or any co-trustee resides. . . .

Foundation asserts that because its principal office is located in Oklahoma County, that is where it "resides" for purposes of the statute.

¶ 11 We reject Foundation's assertion for two reasons. First, section 175.23 provides

in part for venue in actions dealing with the *construction* of trust agreements. Practically speaking, this is not primarily an action to construe the Trust. There is no dispute over the Trust's meaning, or what the settlor intended to do, or what powers the trustee has. At the heart of the Smiths' lawsuit is their assertion that, under Oklahoma law, Foundation did not have the authority to serve as trustee, and, therefore, the Trust was void. To resolve this issue, it is Oklahoma law that must be construed, not the Trust.

■ ¶ 12 It is true that the Smiths have also made claims that fit under some of the language in section 175.23(A). However, when a plaintiff seeks various forms of relief, it is the principal object of the litigation that determines venue. *Ruggles v. First Nat'l Bank of Carmen,* 1976 OK CIV APP 40, ¶ 11, 558 P.2d 419, 421. That object, as previously explained, is to void the Trust by applying Oklahoma law, not to construe it.

■ ¶ 13 Second, even if we were to conclude that venue was proper in Oklahoma County due to section 175.23, that would not mean venue would lie there exclusively. Title 12 O.S.1991 § 143, provides that:

All venue statutes are cumulative wherever they appear and any action brought under any such statute may be maintained where brought. No court shall apply one venue statute in preference to another whether considered general or special.

This statute abolished the preference a specific venue statute had as against a general statute. *Harwood v. Woodson,* 1977 OK 57, ¶ 10, 565 P.2d 1, 3. The Oklahoma Supreme Court has consistently held that if venue attaches under any statute, then the action is properly filed. *Stevens v. Blevins,* 1995 OK 6, ¶ 5, 890 P.2d 936, 938. We conclude the venue is proper in Dewey County, and the trial court did not err in denying Foundation's motion to dismiss.

■ ¶ 14 We turn to the principal contentions of error raised by Foundation. It claims that the trial court's judgment was erroneous because Foundation *did* have authority to act as trustee, and, even if it did not, the trust would not fail.

¶ 15 The Smiths attacked Foundation's authority to act as trustee because of a provision of the Oklahoma Banking Code in effect at the time the Trust was created in 1984, 6 O.S.1981 § 1002, which provided:

All corporations except [certain banks, banking associations, and trust companies] are prohibited from acting in any of the following fiduciary capacities within this state:

. . . .

(3) As trustee under any inter vivos trust. . . .

¶ 16 Standing alone, this statute would seem to prohibit corporations such as Foundation from acting as trustee. However, at the time the Trust was created, section 1020 of the Code stated:

Section 1002 of this act shall not be construed to deny to religious, charitable, educational, benevolent or scientific corporations the right to exercise any trust powers granted to them *by existing law*. (Emphasis added.)

■ ¶ 17 The Legislature amended section 1020 in 1997 at the same time that it enacted the Oklahoma Charitable Fiduciary Act, found at 60 O.S. Supp.1999 §§ 301.1–301.13. The amended version adds the words "or any trust agreement" to the end of section 1020. Thus, unquestionably, Foundation has the authority to act as trustee for inter vivos trusts executed after the amended version became law in 1997. The issue facing the trial court and this court is whether that authority existed in 1984, on the date the Trust was executed, because it is the law in force at the time an agreement is made that determines the validity and effect of such agreement. *Tom P. McDermott, Inc. v. Bennett,* 1964 OK 197, ¶ 13, 395 P.2d 566, 570.

¶ 18 The trial court held there was no "existing law" in 1965 when section 1020 was enacted (or, implicitly, when the Trust was executed in 1984) authorizing a corporation to act as trustee of an inter vivos trust. It concluded that Foundation did not have the capacity to serve as trustee, and the Trust was void. For the following reasons, we conclude the trial court erred in its holding.

¶ 19 We can find no express pre–1997 law granting corporations such as Foundation the authority to serve as trustee. Neither does there appear to be any express prohibition under "existing law"—other law in effect at the time of promulgation of section 1020. Thus, the essential argument between the parties is whether the authority exists until expressly taken away, or whether the authority exists only if expressly granted. Our research of applicable Oklahoma and external law indicates the former is most likely to be true.

¶ 20 To begin with, early law did not allow a corporation to serve as trustee "on account of its impersonal artificial character ." George Gleason Bogert and George Taylor Bogert, *Trusts and Trustees* § 131 (2d ed. revised 1984). This objection was overcome as early as the middle of the 1700's. *Id.* By the early 1900's, "[t]he general rule in this country now is that a corporation may hold real or personal property in trust for any purpose that is not foreign to the business for which it was created; and a court of equity will enforce such trusts." *State v. Higby Co.,* 130 Iowa 69, 106 N.W. 382, 383 (Iowa 1906). The Iowa Supreme Court applied this rule after noting that Iowa statutes allowed corporations to transact any lawful business and deal with property as a natural person could.

¶ 21 Similarly, before section 1020 was enacted, Oklahoma had granted corporations the power to carry on business and acquire and manage real property. 18 O.S.1961 § 1.19(5) and (6). More specifically, and similarly to the Iowa statutes, our statutes allowed charitable or educational corporations to carry on all business enterprises that an individual or corporation might lawfully carry on under our laws as auxiliary enterprises. 18 O.S.1961 § 549. Furthermore, our statutes have long allowed the operation of trusts as business enterprises. *See State ex rel. Warren v. Douglas,* 1939 OK 111, 89 P.2d 298.

¶ 22 Long before section 1020 became law, the Supreme Court, in *Phillips v. Chambers,* 1935 OK 1055, 51 P.2d 303, asked: "Does the common law supplement the statute law in this jurisdiction to an extent which justifies

the judicial approval of a charitable trust?" *Id.* at 308. The court answered in the affirmative and held that a county could serve as a trustee of a charitable trust funded by real property. While that case does not directly address our issue, it illustrates the point that entities other than natural persons could serve as trustees for charitable trusts.

¶ 23 We feel the Oklahoma Legislature acknowledged the already existing authority of charitable corporations to act as trustees in the 1997 Charitable Fiduciary Act, and the related amendment to section 1020 of the Banking Code. The Act states:

> 2. *Clarification* is needed regarding the capability of charitable, religious, educational, and eleemosynary organizations to act as a fiduciary in obtaining and administering present and future gifts benefitting ... such organizations and their affiliates; and

> 3. *Clarification* is needed regarding the fiduciary powers of charitable, religious, educational, and eleemosynary organizations in the administration of trusts which provide for present or future gifts benefitting ... such organizations.

60 O.S. Supp.1999 § 301.2(2) and (3)(emphasis added).

¶ 24 The Act's purpose is stated to be to authorize those organizations to act as a fiduciary and to clarify their powers when doing so. *Id.* at section 301.2(B). However, another provision of the Act states it shall apply to charitable trusts and fiduciary relationships of charitable organizations "in existence at the time this act takes effect or thereafter established and to resolve the uncertainties surrounding the administration of charitable trusts by charitable organizations and the exercise of the fiduciary powers set forth in this act." *Id.* at section 301.11.

¶ 25 The legislature was clearly acknowledging that charitable organizations were administering these trusts before 1997. If it was otherwise, the legislature would not refer to those trusts already "in existence." Also, the pre 1997 version of section 2002 refers to "existing law." If no such law existed regarding the right of religious or charitable institutions to act as trustees, it would appear to render this language meaningless. Of course, we will not assume the legislature has done a vain or useless act. *Globe Life and Acc. Ins. Co. v. Oklahoma Tax Comm'n,* 1996 OK 39 ¶ 15, 913 P.2d 1322, 1328. We conclude that by enacting the Oklahoma Charitable Fiduciary Act the legislature was not creating the authority of certain institutions to administer trusts, but acknowledging and clarifying already existing authority.

¶ 26 Further support for our conclusion that charitable and religious corporations had the power to act as trustees is found in the legislative history of the Oklahoma Banking Code. Our research reveals that the original Code, passed in 1965, did not prohibit corporations from serving as trustees under any "inter vivos trust." That phrase was added in 1968. *See* 6 O.S.A. § 1002, (West 1996), "Historical and Statutory Notes." This indicates that corporations held this authority under "existing law" when section 1020 was enacted in 1965, and lost the authority only when the statute was amended in 1968. It follows that section 1020 preserved that authority, under existing law, for religious, charitable, educational, benevolent, or scientific corporations, such as Foundation.

¶ 27 In general terms, the Restatement of Trusts supports this conclusion. It states:

> Although capacity is not expressly conferred upon the corporation to administer trusts, it is authorized to act as trustee for such purposes as are necessary or proper for the exercise of the powers conferred upon it. If property is transferred to a corporation in trust for a purpose germane to the purposes for which the corporation is created, it has capacity to administer the trust.

*Restatement (Second) of Trusts,* § 96(2) cmt. e. (1959). Unquestionably, the ultimate purpose of the Trust is germane to the purposes of Foundation.

¶ 28 We conclude that Foundation's authority to serve as trustee existed prior to the passage of the Oklahoma Banking Code, with that authority being preserved by section 1020 of the Code and later clarified by amendment to section 1020 in 1997. Because such authority existed when the Trust was

executed, the trial court's grant of judgment to the Smiths was error. Indeed, Foundation was entitled to summary judgment on this issue.

¶ 29 Although our legal analysis largely settles the issue, our conclusion that the trial court's grant of judgment was erroneous is bolstered by analysis of Foundation's additional contention—that even if Foundation did lack the authority to serve as trustee, the Trust would not fail. The trial court held that it would. Again, we disagree.

¶ 30 "It is a rule that admits of no exception that equity never wants a trustee...." *Hill v. Hill*, 1915 OK 338, 152 P. 1122, 1126. In *Hill*, the Supreme Court cited the rule that if a trust is properly created, the trust will not fail for want of a trustee. After determining that the trust in that case was not the kind capable of being performed only by the named trustee and that the settlor did not intend for only the named trustee to do so, the court concluded:

> Under these circumstances, when the trustee is relieved of his duties, we think the authorities are uniform that the execution of the trust devolves upon the court, and a successor may and should be appointed to carry out the trust according to the intent and desires of the settlor. *Id.*

¶ 31 The Restatement of Trusts is in accord with this principle, as to trusts created for a third person: "If the conveyance is ineffective only because no trustee is named in the instrument of conveyance or because the person named as trustee is dead or otherwise incapable of taking title to the property, a trust is created." *Restatement (Second) of Trusts,* § 32(2) (1959). The Restatement is also in accord as to charitable trusts. It provides:

§ 397  Failure of Trustee

(1) Except as stated in Subsection(2), a disposition for charitable purposes will not fail because of the failure of the trustee to act or for want of a trustee.

(2) If the settlor manifests an intention that the intended charitable trust shall not arise or shall not continue unless the person named by him acts as trustee, or if the purposes of the trusts cannot be carried out unless the person named by him acts as trustee, the intended charitable trust fails unless the person named by him as trustee acts as trustee.

Section 397(2) clearly does not apply to our facts. The Trust specifically provides at section 7.2 for the possibility of the resignation of Foundation as trustee, and the appointment of a successor. And we reject the Smiths' assertion that the Trust is not a charitable trust. The Trust's stated purpose is "to provide endowment income to the Baptist causes...."

¶ 32 We conclude that if the Foundation did not have authority to serve as trustee, then the Trust did not fail. The trial court would simply appoint a qualified trustee.

¶ 33 In conclusion, we hold that the trial court's judgment was erroneous. We reverse and remand the case with instructions to grant Foundation's motion for partial summary judgment as to the Smiths' request for declaratory judgment declaring the Trust void. The Smiths' other theories and/or causes of action were not addressed by the lower court, and are not part of this appeal. We express no opinion as to them.

¶ 34  REVERSED AND REMANDED WITH INSTRUCTIONS AND FOR FURTHER PROCEEDINGS.

¶ 35 GOODMAN, C.J., Presiding, and REIF, J., concur.