## SAPULPA PETROLEUM CO. et al. v. McCRAY (two cases).[*]

(Circuit Court of Appeals, Eighth Circuit. March 14, 1925.)

### Nos. 6777, 6778.

**1. Contracts ⊝175(3)—Parol testimony held insufficient to make persons not named therein the real parties to a written contract.**

In view of the strong legal presumption that, where negotiations of parties result in written contracts, all their agreements relative to the subject-matter of the contracts are expressed therein, parol testimony, if considered competent, *held* insufficient to establish, against their denial, that persons not named in a written contract were the real parties in interest therein.

[*]Rehearing denied June 3, 1925.

**2. Corporations ⚖︎123(24)—Sale of stock of owned corporation, under pledge, held to extinguish all interest of stockholders in property of the owned corporation.**

Where a corporation, whose only interest in oil leases was through its ownership of the stock of another corporation, which owned the leases, pledged such stock, the pledge was foreclosed, and the stock sold to an outside party, a stockholder has no interest remaining in the oil leases which can be made the basis of a suit against other stockholders or the corporation.

**3. Judgment ⚖︎828(1) — Judgment of state court held bar to second suit in a federal court.**

A suit in a federal court *held* barred by the judgment of a state court in a suit between the same parties and involving substantially the same subject-matter.

**4. Judgment ⚖︎713(2)—Rule as to res judicata stated.**

When a second suit is brought between the same parties and upon the same cause of action as the first, the judgment in the former suit is conclusive in the later as to every question and issue which was, or might have been, presented and determined in the first suit.

**5. Judgment ⚖︎592—When judgment constitutes estoppel stated.**

One who pleads, produces evidence, and submits to judgment or decree on a part of an indivisible cause of action thereby estops himself from again maintaining an action on it or any part of it.

**6. Receivers ⚖︎16—Appointment of a receiver for a corporation held improvident.**

Appointment of a receiver for a corporation *held* improvident, where it did not appear from the record that it was necessary to conserve its property, nor to prevent irreparable loss to complainant, nor that there was a strong probability that he would prevail on the merits of the case.

**7. Appeal and error ⚖︎1175(7) — Appellate court may dismiss suit on appeal from interlocutory decree.**

The Circuit Court of Appeals has jurisdiction to dismiss a suit on appeal from an interlocutory decree, where it appears from the record that the complainant cannot ultimately recover.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit in equity by W. S. McCray against the Sapulpa Petroleum Company and others. Defendants appeal from two interlocutory decrees of the District Court. Reversed on both appeals, with directions.

J. P. O'Meara, of Tulsa, Okl. (M. H. Silverman, of Tulsa, Okl., on the brief), for appellants.

F. E. Riddle, of Tulsa, Okl. (Stuart, Sharp & Cruce, of Oklahoma City, Okl., and H. O. Bland, of Tulsa, Okl., on the brief), for appellee.

Before SANBORN and KENYON, Circuit Judges, and BOOTH, District Judge.

SANBORN, Circuit Judge. This is a suit in equity by W. S. McCray against the Sapulpa Petroleum Company, a corporation, Bates B. Burnett, B. C. Burnett, Anderson T. Herd, and Cushing Petroleum Company, a corporation, for a temporary and permanent injunction against the interference by the defendants with McCray's possession of two leasehold estates owned by the Sapulpa Company, known as the Susan Cedar lease on the northeast quarter of the northeast quarter of section 25, township 19 north, range 7 east, and the Noah Timothy lease, hereafter called the two leases, against the enforcement by the defendants of that part of the decree of the district court of Creek county, Okl., in the suit of McCray against the Sapulpa Petroleum Company, G. W. Wills, receiver of the property of that company, Bates B. Burnett, and B. C. Burnett, filed September 16, 1922, and affirmed by the Supreme Court of the state of Oklahoma September 25, 1923 (McCray v. Sapulpa Petroleum Co., 102 Okl. 108, 226 P. 875), whereby that court adjudged that the Sapulpa Company was, prior to the commencement of that suit and at the date of that decree, the owner of the two leases, that McCray had no interest therein at the beginning of the suit or at the time of the decree, and that the title of the Sapulpa Company was by that decree quieted in that company against McCray and all parties claiming under him. When that suit was brought, McCray was in possession of the two leases, and one of the objects of this suit is to keep him in possession against the execution of that decree of the state court, and to establish and foreclose an alleged equitable lien in favor of McCray for $155,000 and interest upon the two leases, their proceeds, and other producing leases of the Sapulpa Company.

In the present suit McCray applied to the court below for an interlocutory injunction. His application was opposed by the defendants. The parties to this suit presented and examined their witnesses upon the question of the granting of the injunction in open court, stipulated many of the facts, and tried the question whether or not the interlocutory injunction should be issued as on a final hearing in equity. After the hearing

and due consideration the court below issued an interlocutory injunction, whereby it forbade the defendants from interfering with the possession or operation by McCray of the two leases, from collecting any of the moneys or funds they had produced subsequent to September 16, 1922, the date on which the decree in the state court was rendered, and from selling or disposing of any of the 200,000 shares of the preferred stock of the Cushing Petroleum Company, of the par value of $5 per share. The defendants have appealed from this order. Their counsel insist that the evidence does not sustain the claim of McCray upon the decisive issues of fact in the case, that he is estopped from maintaining this suit by his former suit and decree therein, and that his suit is barred by the statute of limitations. These facts are admitted or established beyond dispute:

The two defendants, the Cushing Company and Anderson T. Herd, have no interest in this suit; they are mere nominal parties; the Cushing Company has no property of any real value, and Herd is in bankruptcy. In July, 1919, the Sapulpa Company owned seven oil and gas leases, which were producing oil. McCray, Bates B. Burnett, and B. C. Burnett each owned one-third of the shares of stock of this corporation. The property of the Sapulpa Company was worth from $450,000 to $600,000. McCray alleged in his complaint in this case, and it is nowhere denied, that on June 11, 1924, when he brought this suit, the assets of the Sapulpa Company and the assets of the Cushing Company taken together had all been dissipated, except the two leases involved in the former suit, and that they were not worth more than $60,000 or $70,000. In July, 1919, the three owners of the stock of the Sapulpa Company conceived the plan of organizing a new corporation, which should issue a much larger amount of capital stock and debenture notes to the amount of $600,000. Accordingly they went to New York and on August 15, 1919, made a written agreement with Anderson T. Herd, broker and promoter, that he should organize a corporation with a capital stock of $6,000,000, consisting of 1,000,000 shares of common stock and 200,000 shares of preferred stock, each of a par value of $5 per share; that such corporation should issue and sell debenture notes or bonds to the amount of $600,000; that this new corporation should provide that the 200,000 shares of preferred stock should be retired by applying to their retirement every 30 days 60 per cent. of the gross working interest run of the oil coming from the leases

of the Sapulpa Company, and that corporation did subsequently so provide by inserting this provision in each of its certificates of shares of stock; that the three owners of the stock of the Sapulpa Company should assign and deliver to the new company all their stock in the Sapulpa Company, and receive and retain in lieu thereof the 200,000 shares of the preferred stock and 300,000 shares of the common stock of the new company, while the other 700,000 shares of the common stock should be used by Herd, the promoter; that the new company should receive 80 per cent. of the face value of the debenture notes that Herd should sell; that the difference between that amount and the par value of such notes should also go to Mr. Herd; and that on September 15, 1919, the three owners of the stock of the Sapulpa Company should assign, transfer, and deliver their shares to the treasurer of the new company. This agreement was signed by W. S. McCray, by the Sapulpa Petroleum Company (by W. S. McCray as president), by the two Burnetts, and by Herd. Pursuant to its terms, the new company, the Cushing Petroleum Company, was duly organized. The three owners of the stock of the Sapulpa Company assigned and transferred their stock according to the agreement, and each of them became entitled thereby to $333,334 par value of the preferred stock and his proportion of the common stock of the Cushing Company.

On September 25, 1919, W. S. McCray made a written agreement with O. S. Kelly, of Kansas City, Mo., which was drawn by Mr. O'Meara, the attorney of the Sapulpa Company, wherein McCray recited that he was the owner of $333,334 of the preferred stock and his proportion of the common stock of the Cushing Company, and whereby, in consideration of $225,000, of which $25,000 had been paid and the balance should be paid in 30 days, he sold, assigned, and transferred to Kelly all of said preferred stock and all interest of every kind he might own or hold in the Sapulpa Company or in any of its property. Time was made the essence of that contract, and it provided that, if the balance of the purchase price was not paid in 30 days, no further liability of either party should exist. On October 25, 1919, McCray made a written agreement with Kelly, drawn by O'Meara, that the time of payment specified in the agreement was modified as follows: "$50,000 cash in hand, $50,000 December 1, 1919, and the remaining $100,000 on or before January 5, 1920" —McCray to have 6 per cent. interest on

deferred payments. Herd, the promoter, and Del Mass, his associate, caused McCray to be paid under this agreement $75,000, and nothing more was paid upon it. McCray declared the contract at an end. Herd and Del Mass insisted that they had title to the stock described in it, and simply owed Mc-Cray the balance due, $150,000. B. C. Burnett tried to negotiate a settlement between them. In the course of this negotiation he consented to the possession of the two leases by McCray as security for the performance of the agreement of settlement that he hoped to make if that agreement should be made, and McCray took possession of the two leases on April 9, 1920, and has since retained and operated them. The negotiation, however, utterly failed, and no settlement was made. There is no evidence in this case that the Sapulpa Company, or the Cushing Company, or Bates B. Burnett ever authorized, made, or ratified the act of B. C. Burnett relating to the possession and operation of the two leases by McCray. Some time after the contract with Kelly was made and the agreement of settlement failed, the certificates for the shares of McCray in the stock of the Cushing Company were reissued to Bates B. Burnett to secure the payment by Herd to him of $150,000 which Herd owed to him and to the Cushing Company.

Debenture notes or bonds of the Cushing Company to the amount of several hundred thousand dollars were issued and sold by Herd, and the Cushing Company, secured the payment of these bonds by its pledge of all of the stock of the Sapulpa Company The bonds were not paid, and that pledge was foreclosed, and all the stock of the Sapulpa Company was sold under the foreclosure to one Hawse for about $10,000, and the stock of the Cushing Company became worthless.

[1] We turn from these indisputable facts to the conflicting testimony upon the issue of fact that counsel seem to deem decisive in this case. McCray testified that in the negotiations prior to September 25, 1919, the date of his written contract of sale to Kelly, he agreed to sell, and Bates B. Burnett, B. C. Burnett, and Anderson T. Herd agreed to buy and pay for, his stock in the Cushing Company; that their agreement so to do was a condition of his entering into the reorganized company; that his written contract with Kelly for the sale of that stock was made for the use and benefit of them; that each of them told him so before and at the time the Kelly contract was made; that he did not have their names put in the writ-

ten contract of sale, because he acted on the advice of Mr. O'Meara, who was his attorney; that Mr. O'Meara was present when the agreement was made; and that this agreement between him, the two Burnetts, and Herd that they would buy and pay for his stock and interest in the two corporations was not in writing.

On the other hand, J. P. O'Meara testified that he was the attorney of the Sapulpa Company, but never represented Mr. Mc-Cray, except as attorney for that company; that he went to New York, attended the conferences and negotiations, and the making of the contracts which resulted in the sale of the stock of the Sapulpa Company to the Cushing Company; that he knew of no contracts, understandings, or agreements of the parties, except those reduced to writing and signed by the parties; that nothing was ever said, and no agreement, verbal or written, was ever made, that contemplated that McCray should not participate in the Cushing Company and should be paid for his interest, except the Kelly contract; that he drew the Kelly contract; that he never heard that Bates B. Burnett or B. C. Burnett ever had any connection with it until 3½ or 4 years after it was made; that shortly after the Kelly contract was made Bates B. Burnett offered to sell to Herd the interests of the two Burnetts on the same terms that Mc-Cray sold his interest to Kelly. Bates B. Burnett testified that McCray never, at the time of the negotiations for and the transfer of the stock of the Sapulpa Company, made any condition that he should be bought out and have nothing to do with the new company, and he never heard of such a claim until some time after McCray brought his suit in the state court; that he never had any connection whatever with the Kelly contract, and that he was certain his brother knew nothing about it until the deal was made; that he tried to make a like deal with Mr. Herd for the sale of his stock, and that Herd and Del Mass, two of the promoters of the Cushing Company, were the real parties in interest in the Kelly contract. B. C. Burnett testified that there was no understanding, oral or written, that McCray was to be bought out and was to have no connection with the Cushing Company, nor was there any agreement that he was to turn over his stock in the Sapulpa Company and get cash later; that he (Burnett) never had any interest in the Kelly contract, and never heard of the deal with Kelly until perhaps the day before the contract was signed.

No witness came to corroborate the testimony of Mr. McCray, and, in view of the facts that his testimony that there was a verbal agreement between him and the two Burnetts that they should buy and pay him for his stock in the Cushing Company, that he made this agreement a condition of his assignment of his stock in the Sapulpa Company, and that the Burnetts were the real parties in interest in the Kelly contract is directly contradicted by O'Meara, Bates B. Burnett, and B. C. Burnett, and that, where the negotiations of parties result in subsequent written contracts, the strong legal presumption is that all their agreements relative to the subject-matters of the contracts are expressed therein, and the general rule that oral testimony of the statements and the claims of the parties made in the prior negotiations are not competent to condition or modify their resulting contracts, we are unable to resist the conclusion, not only that McCray has failed to prove his alleged oral condition and oral contract and understanding that he should be bought out by the two Burnetts, in consideration of his assignment of his stock in the Sapulpa Company, or his claim that they were the real parties in interest in the Kelly contract; but our conclusion is that the evidence conclusively proves that there never was any such condition, and that the Burnetts never were the real parties in interest in the Kelly contract, and that they never agreed to buy from McCray or pay for any of his stock.

[2] Moreover, the subject-matter of this suit is the leases of the Sapulpa Company. The only interest, legal or equitable, that the Cushing Company ever had in these leases, was through its ownership of the stock of the Sapulpa Company, and the only interest or equity of the stockholders of the Cushing Company in those leases was through the Cushing Company's ownership of the stock of the Sapulpa Company. The Cushing Company became indebted to the purchasers of its debenture notes or bonds, and their rights and interests in its property were superior in law and in equity to those of its stockholders, notwithstanding the recital in the certificates of the stock that the 200,000 shares of preferred stock were to be retired out of 60 per cent. of the run of oil of the leases. The Cushing Company pledged all the stock of the Sapulpa Company to secure the payment of its debenture notes. Those notes were never paid, that pledge was foreclosed to raise money to pay them, and under that foreclosure the stock of the Sapulpa Company was sold to Mr. Hawse. That sale unavoidably extinguished all right, title, and interest of the stockholders of the Cushing Company in the capital stock, the leases, and other property of the Sapulpa Company, and the conclusion is that McCray had no legal or equitable lien, right, title, or interest in or to the Sapulpa Petroleum Company, or any of its leases or property, when he commenced this suit or since, that there is no equity in his alleged claim against the Burnetts, the Sapulpa Company, or any of its property, and that the order for the interlocutory injunction must be reversed.

[3] Nor is this the only ground for our conclusion. Mr. McCray alleged in his bill in this suit that all the assets of the Sapulpa Petroleum Company and of the Cushing Petroleum Corporation practically had been dissipated, except the two leases in his possession, and that they and the moneys on hand, the proceeds of them, were not of a value exceeding $60,000 or $70,000. He alleged that he had an equitable lien upon these two leases, and upon all of the producing leases owned by the Sapulpa Petroleum Company in 1919, and he prayed for a decree for his retention of possession of the two leases, for a foreclosure of his equitable lien upon the two leases, upon the proceeds thereof, upon the other producing leases, the equipment and personal property used in connection therewith, and for a judgment for damages. But the bill and record before us leave no doubt that the res in this case, the only subject-matter of this case of any real value, was and is the two leases, the possession thereof and proceeds thereof; all other property and interest mentioned in the suit are alleged to be practically valueless, and hence negligible.

This record also discloses the fact that the res in the suit in the state court, the only subject-matter of that suit of any real value, was these two leases, the possession of them, and the proceeds of them; no other property or interests of value were involved in that suit. It is true that in the former suit Mr. McCray sought to obtain the title to the two leases, their possession, and their proceeds by pleading and attempting to prove that his written contract with Kelly was in reality by and for the benefit of the Burnetts and Herd, that the Burnetts, and through them the Sapulpa Petroleum Company, made an agreement with him to vest in him the title, possession, and proceeds of these two leases in payment of the unpaid part of the purchase price of his stock mentioned in the Kelly contract, and by praying the court to enforce performance of that alleged agree-

ment. It is also true that in this suit he seeks to obtain the same result and the same property by pleading and attempting to prove that the Kelly contract was in reality made by and for the Burnetts and the Sapulpa Company, that this Kelly contract was the result of a fraudulent conspiracy between the Burnetts and Herd to obtain his stock in the Cushing Petroleum Corporation from him without paying for it, and that, by reason of the same Kelly contract, that conspiracy, and McCray's assignment of that stock he acquired an equitable lien for the unpaid part of the purchase price of the stock mentioned in the Kelly contract upon the two leases, their possession and proceeds, and he seeks in this suit that by the foreclosure thereof he shall get title to and perpetual possession of this property and its proceeds. So it is that the real parties in interest in the former suit and in this suit are the same or the representatives of the same interests. McCray is the plaintiff in the former suit; McCray is the plaintiff in this suit. The two Burnetts and the receiver of the Sapulpa Company were the defendants in the former suit; the two Burnetts and the Sapulpa Company and its receiver are the defendants in this suit. The subject-matter of the two suits was the same —the two leases, the possession and proceeds thereof. The object sought by the plaintiff in the two suits was the same—the title and possession of that res. The indispensable basis of any recovery by the plaintiff was the same—the Kelly contract, the acts, agreements, sayings, and transactions of McCray and the defendants at the time of, prior, and subsequent to that contract relating to the stock of McCray in the two companies—and on these, if he ever had any cause of action in either suit, that cause was and is founded. Not only this, but there was no agreement, understanding, fact, or act competent to establish McCray's alleged cause of action for the recovery of this property in the present suit which he could not have pleaded and proved to the same extent in his former suit in the state court. There is substantial identity in the interests represented, in the rights asserted, and in the desiderata sought in the two suits.

[4] When a second suit is brought between the same parties and upon the same cause of action as the first, the judgment in the former is conclusive in the latter as to every question and issue which was or might have been presented and determined in the first suit. Harrison v. Remington Paper Co., 140 F. 385, 400, 72 C. C. A. 405, 3 L. R. A.

(N. S.) 954, 5 Ann. Cas. 314; Pierce v. National Bank of Commerce (C. C. A.) 268 F. 487, 495. For the reasons which have now been stated, Mr. McCray's second suit here under consideration is, in our opinion, between the same parties, on the same cause of action, as his former suit in the state court, and the judgment in that suit conclusively estops him from maintaining this suit.

[5] Moreover, even if we are mistaken in this view, nevertheless he had but one ground or cause of action for the recovery of this res, if he had any, and that was the Kelly contract and the acts, facts, agreements and transactions surrounding its making and his transfer of his stock under it. In his first suit he pleaded and attempted to prove these facts, agreements, acts, and transactions which he deemed constituted that cause of action. That suit was in equity, and in a suit in equity the complainant is required to plead and prove all his grounds for the relief he seeks; he may not experiment with the court, plead one ground in one suit and another in a subsequent suit, and try his case piecemeal. He could have pleaded, and, if he had proper evidence to sustain his claim, could have proved, in his first suit, every ground he has pleaded for the relief he seeks in this suit. His right of recovery, his cause of action, in this suit, was pleadable and provable in his first suit, and he is estopped from successfully pleading and proving it in this case, by his failure to present it in the former case. One who pleads, produces evidence, and submits to judgment or decree on a part of an indivisible cause of action thereby estops himself from again maintaining an action upon it, or any part of it. One may not split his cause of action. Brown v. First National Bank, 132 F. 450, 451, 66 C. C. A. 293; Harrison v. Remington Paper Co., 140 F. 385, 397, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Warburton v. Trust Co. of America, 182 F. 769, 774, 775, 105 C. C. A. 201.

In the former suit McCray pleaded a part of his claim to the two leases, their possession and proceeds. The defendants by their answer denied the averments of his complaint, alleged that they were the owners and entitled to the possession and proceeds of that property, and prayed, first, that he be required to surrender the leases, and, second, that the title to the two leases and to all the production therefrom be quieted in the defendant, the receiver of the Sapulpa Petroleum Company. To this answer McCray filed

a reply, and, after evidence, hearing, and a decision on the merits of these issues, the state court decreed that the Sapulpa Company was the owner of the leases and their proceeds, and that the title thereto be quieted in it as against McCray and all parties claiming under him, and he is estopped from directly or indirectly reversing that decree, or avoiding its force or its lawful effect, by this suit.

[6] The interlocutory injunction from which this appeal was taken was granted on July 19, 1924. On the 4th day of August, 1924, the district court of Creek county, Okl., on the complaint of C. A. George, a resident of that county, appointed J. A. Fulp general receiver of the Sapulpa Petroleum Company, and authorized and directed him to take possession, of, manage, and conduct its affairs and business. He immediately gave his bond, qualified, and took possession as such receiver of all the property of that corporation, except the two leases in the possession of McCray. After this had been done, McCray filed a supplemental bill and an amendment to his original bill in this suit, wherein he alleged that all the properties of the Sapulpa Company were insufficient to pay his claim; that the receiver of the First National Bank of Sapulpa claimed a mortgage of $7,500 on one of the two leases, and was threatening to advertise it for sale; that the Virginia Trust Company claimed some sort of interest, and that C. A. George had conspired with the Burnetts and the Sapulpa Company to file a pretended and fraudulent claim for $3,060.48 in the office of the county clerk of Creek county, had filed a suit in the district court of that county upon this claim, in which the Burnetts and the Sapulpa Company had appeared, and had procured the appointment of a receiver with the fraudulent purpose of defeating the jurisdiction of the court below; that on or about the last day of July, 1924, he (McCray) had served upon the Burnetts and the Sapulpa Company a notice that a receiver would be applied for in this suit in the court below on August 8, 1924.

On that day the Sapulpa Company and F. A. Fulp, its receiver, appeared specially and answered Mr. McCray's application for this receiver. In that answer, which was verified, they denied that the claim of C. A. George was false or fraudulent, and alleged that it was a just claim for its amount due him from the Sapulpa Company for work and labor done by him for that company in the care and operation of its leases; that he had filed a lien statement under the statute

and secured his statutory lien on the properties of that company; that that company had pledged its oil runs to secure so many of its creditors that it could not pay those who had furnished it labor and materials, who were entitled to statutory liens; and that, in the absence of a receiver, creditors would bring so many suits and claim such attorney fees that the property of the company would be dissipated, unless a receiver was appointed. They also alleged in their answer that, when Mr. Fulp was appointed and took possession, no receiver had been appointed by the federal court below, and that no pleading but the original bill of McCray in this suit had been filed. They denied that there was any fraud or collusion between the Burnetts, the Sapulpa Company, and Mr. George in the procuring of the appointment of Mr. Fulp as receiver. They presented this answer to the court below, and a certified copy of the petition of C. A. George to the state court for the appointment of a receiver, and a certified copy of that court's order appointing Mr. Fulp.

At the hearing by the court below on August 8, 1924, upon the application to it for the appointment of a receiver, no affidavit or other evidence of any kind that the averments of the petition therefor, with reference to the fraudulent character of the George claim or the fraudulent collusion, denied by the answer, was presented, and those charges stood denied and futile. The application was submitted on the petition for the receiver, the answer, the amended and supplemental bill of McCray in this suit, and the testimony on the application for the injunction, which had been presented in July. Thereupon the court on August 8, 1924, appointed Mr. J. H. Knox receiver of four of the leases of the Sapulpa Company, not including the two leases in possession of McCray, ordered all parties in possession thereof, including the pipe line companies, to deliver them and all moneys for oil runs thereon to Mr. Knox, and authorized him to continue to operate the leases and to receive the proceeds of the oil runs thereof.

For the reason that the pleadings and evidence in this case disclose no equity in the plaintiff, entitling him to any interest or lien upon the property of the Sapulpa Petroleum Company, for the reason that the record in this case discloses the fact that McCray is estopped from maintaining any suit upon any such lien by his former suit in the state court and the decree therein, and for the reason that on the pleadings, evidence, and record at the preliminary hear-

ing neither (1) the fact that there was imminent danger that unless a receiver of the four leases was appointed they would be deteriorated in value or their proceeds would be wasted during the pendency of the suit, nor (2) the fact that the plaintiff would suffer irreparable loss from such deterioration and waste, nor the fact (3) that there was a strong probability that the plaintiff would prevail on the merits of this case—facts essential to the appointment of a receiver under the general principles and practice in equity—appeared, our minds have been forced to the conclusion that the appointment of Mr. Knox as receiver of these four leases in this case was improvidently granted, and must be reversed. Folk v. United States, 233 F. 177, 183, 147 C. C. A. 183; Jackson v. Parkersburgh & O. V. Electric Ry. Co. (D. C.) 233 F. 784, 790, 791.

[7] Undoubtedly this court has the jurisdiction to dismiss this suit now upon consideration of the amended complaint, the evidence in the record here, and the arguments and briefs of the counsel. Smith v. Vulcan Iron Works, 165 U. S. 518, 524, 17 S. Ct. 407, 41 L. Ed. 810; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 495, 20 S. Ct. 708, 44 L. Ed. 856; Meccano v. Wanamaker, 253 U. S. 136, 141, 142, 40 S. Ct. 463, 64 L. Ed. 822. We are strongly of the opinion that Mr. McCray cannot ultimately recover either at law or in equity in this case, and that this litigation ought to cease. We refrain, however, from dismissing the suit out of an abundance of caution, in order that the views we have expressed may be more conveniently and equitably made effective in the court below.

Our conclusion is that the order for and the injunction made on July 19, 1924, from which this appeal was taken, should be reversed; that the order of August 8, 1924, for the appointment of J. H. Knox as receiver of the property described in that order, should be reversed; that all the moneys and property in the possession or under the control of J. H. Knox, the receiver, W. S. McCray, the plaintiff, or the court below in this suit, including the two leasehold estates in the possession of McCray and the proceeds derived by them, or either of them, from this property, should be forthwith delivered by them to J. A. Fulp, the general receiver of the Sapulpa Petroleum Company, appointed by the district court of Creek county, Okl., or to such other party as that court may select and appoint to receive them; that J. H. Knox, the receiver, and his bondsmen, should forthwith account to J. A. Fulp, the state court receiver, or such receiver as the state court may appoint, for all the property and all the proceeds of the property he has received as such receiver, and pay over to such state court receiver all the moneys and proceeds he has obtained, except such moneys and proceeds as have been necessarily expended by him for the beneficial use and preservation of the property he has received; and that further proceedings in this case should be taken in accord with the views expressed in this opinion; and it is so ordered.

