## SKIRVIN et al. v. COYLE et al.

No. 28581.   May 16, 1939.

Rehearing Denied Sept. 26, 1939.

Application for Leave to File Second Petition for Rehearing Denied Oct. 10, 1939.

Bliss Kelly, Ellsworth Jordan, and Fred P. Branson, for plaintiffs in error.

Harve L. Melton and Anderson & Ford, for defendants in error.

WELCH, V. C. J. The order tested by this appeal appointed a general receiver, pending this litigation, of the properties, books and records, of the defendant American Oil & Refining Company, an Oklahoma corporation, and hereinafter referred to as the "Oklahoma Corporation." The defendants (plaintiffs in error here) raise two questions in the following language:

"The court committed error in appointing a receiver and refusing to vacate the order.

"First. For that the record shows that the federal court had appointed a receiver of the identical property and that Mr. Fletcher, the federal receiver, had the property and the books and records of the American Oil and Refining Company, the Oklahoma Corporation and the Nevada Corporation."

"Second: Abuse of discretion in appointing a receiver when no proof of need therefor, or property for the receiver to 'receive', was made."

It is necessary to notice essential facts and the general purpose of plaintiffs' action commenced in 1938. The Oklahoma Corporation was organized in 1916. In 1934 the American Oil and Refining Company, a Nevada corporation, was organized, hereinafter referred to as the "Nevada Corporation." The Oklahoma Corporation conveyed all its properties and assets to the Nevada Corporation some years before this suit was commenced and a large majority of the stockholders in the Oklahoma Corporation exchanged their stock therein for stock in the Nevada Corporation, which had the same or almost the same officers.

This suit was commenced in 1938 by Coyle and some 12 other stockholders. They own only a very small percentage of the aggregate stock, but bring this suit for the alleged benefit of themselves and all other stockholders. Some of the plaintiffs had not exchanged their stock for stock in the Nevada Corporation, while some of them had made such exchange.

It is difficult to briefly state the purpose of the suit. The petition is shown on pages 2 to 83, inclusive, of the record with numerous numbered paragraphs and subdivisions of paragraphs. It names as defendants W. B. Skirvin, individually, and as president; O. W. Skirvin, individually, and as vice president; M. A. Luty, individually, and as secretary-treasurer; and Ellsworth Jordan and F. C. Wallower, individually, and as members of the board of directors, respectively, of American Oil and Refining Company, an Oklahoma Corporation; Mrs. Pearl R. Mesta, and Mrs. George Tyson, formerly Mrs. M. S. Adams; and four corporations, to wit: Texahoma Realty Company; Skirvin Operating Company; Skirvin Hotel Incorporated, and Broadway Development Company. Neither the "Oklahoma Corporation" nor the "Nevada Corporation," in which the plaintiffs are stockholders, is named as party defendant. The suit is principally based on numerous alleged wrongful acts of the individual defendants, occurring since 1916, by which it is asserted the individual defendants took advantage of their controlling position, and operated and managed the affairs of the Oklahoma Corporation to and for their personal benefit, and for the benefit of other corporations and other properties in which the Skirvin family was interested. Various prior acts of mismanagement are alleged; such as, that various properties were sold to the Oklahoma Corporation at exorbitant prices by the individual defendants; that items of property were fraudulently conveyed to the individual defendants; that funds of the corporation were wrongfully expended for the benefit of properties individually held and owned; that various sums were diverted from the treasury of the corporation to the other corporation defendants, and that corporate funds were wrongfully expended for the personal benefit of Mr. Skirvin, and in payment of excessive salaries. There are numerous allegations of similar mismanagement resulting in loss to the Oklahoma Corporation, and wrongful gain to the individual defendants. It is alleged that such mismanagement and misconduct continued for most of the 20 years from 1916 to 1936, and culminated in the plan to organize the Nevada Corporation and to wrongfully convey the properties from the Oklahoma Corporation to the Nevada Corporation. Plaintiffs also allege that the sale and transfer of the assets to the Nevada Corporation was invalid and void. The ultimate relief sought by the petition is a judgment for the aggregate sums of money alleged to have been wrongfully taken from the Oklahoma Corporation by the individual defendants; for a lien to

be impressed on the properties of the individual defendants and corporate defendants for the money wrongfully diverted from the Oklahoma Corporation to those properties. So that in final analysis the suit is to recover for the stockholders various money judgments against the defendants. The petition also seeks, pending litigation, the appointment of a general receiver.

Prior to the commencement of this action a creditors' suit against the Nevada Corporation had been commenced in the federal district court and that court had appointed a receiver of the assets of that corporation, which were the assets theretofore owned by the Oklahoma Corporation, and in 1934 conveyed and delivered to the Nevada Corporation, together with such additions or increases in assets as had been accumulated by the Nevada Corporation from 1934, when it was organized, and up to 1938, when the creditors' suit was filed and receiver was appointed.

So that when this suit was filed and when the trial court herein made its order appointing a receiver for the assets of the Oklahoma Corporation, that corporation was not in possession of any assets. The parties are not in full accord as to the present status in law of the Oklahoma Corporation. The original 20-year charter of 1916 expired in 1936. There was a renewal of the charter or a revivor of the corporation under section 9713, O. S. 1931, 18 Okla. St. Ann. sec. 1, and section 9732, O. S. 1931, 18 Okla. St. Ann. sec. 17. It is a disputed question whether such renewal of charter or revivor of the corporation is valid. If that revivor is valid, then certain of the individual defendants are in charge of the Oklahoma Corporation as its officers, while if the revivor of the corporation is void, then those individual defendants, being the last officers of the expired corporation, continued in charge as statutory trustees, to wind up the affairs of the Oklahoma Corporation. We do not decide this controverted question, as we deem it unnecessary to do so.

At the hearing in this action, for appointment of receiver, the plaintiffs introduced their petition and rested, thereupon, without further evidence on the part of plaintiffs, the trial court made the order here presented on appeal, appointing a general receiver for the Oklahoma Corporation pending this litigation.

There was testimony offered by the defendants in opposition to the appointment of a receiver. That testimony was offered to explain the transfer of the assets from the Oklahoma Corporation to the Nevada Corporation, and covered the stockholders' meeting at which such transfer of assets was authorized; and explained the surrender of stock in the Oklahoma Corporation and exchange for stock in the Nevada Corporation by various of the plaintiffs in this action and numerous other stockholders. We do not further detail that evidence because we shall consider this matter upon the sufficiency of the plaintiffs' evidence to justify the appointment of the receiver.

Upon these facts the defendants urge that the trial court abused its discretion in appointment of a receiver "when there was no proof of need therefor or property for the receiver to receive," and we think there is controlling merit in that contention. The plaintiffs contend that the Oklahoma Corporation has expired, and that while these individual defendants were officers of that corporation and in charge of its affairs, they committed wrongful acts for which these plaintiffs are entitled to recover a money judgment against the individual defendants and the corporation defendants, and which money judgment they seek to recover for themselves and other stockholders. The Oklahoma Corporation is not a party to this action, that corporation has no assets, and if it had assets at this time, there is no showing of necessity for a general receiver. The petition states necessity for examination of the books and records of the Oklahoma Corporation, but that examination and inspection may be fully had without a general receiver. In oral argument it is pointed out that the plaintiffs contend the sale and transfer of assets to the Nevada Corporation was wholly void and that all those assets should be recovered by and returned to the Oklahoma Corporation, and it was stated in oral argument that a receiver would be necessary to then take charge of those assets and manage them for distribution to the stockholders. If that is the need for a receiver, then this appointment was quite premature; furthermore, this action does not seek to set aside that conveyance or to recover any of those assets from the Nevada Corporation; the Nevada Corporation is not a party to this action. As heretofore pointed out these assets now held by the Nevada Corporation are in receivership and in custody of the receiver in federal court. If these plaintiffs desire to attack the transfer of assets to the Nevada

Corporation, surely it will be necessary that they do so in some action in which the Nevada Corporation is a party. Perhaps at the present time it would be necessary for them to so proceed either in the federal court having charge of the receivership or proceed otherwise by permission of that federal court having charge through receivership. At any rate, it is in no manner made to appear that this receivership in this action is necessary as a condition precedent to presentation of the claim of the plaintiffs that the sale and transfer to the Nevada Corporation is void.

While this action involves many details and is complicated, we need not lose sight of the fact that in final analysis this is a suit for money judgment against the named defendants. It is alleged that by certain acts these defendants wrongfully took or received money or benefit from the Oklahoma Corporation. While those acts of misconduct are referred to as mismanagement, we must keep in mind this fact, that said acts of misconduct or mismanagement are alleged to have occurred, all of them, in past years and some of them many years ago, that is, the petition does not allege that at the time of commencement of the suit, the defendants were then engaging in such mismanagement of properties, or affairs of the corporation, as would make it necessary to appoint a receiver to preserve the assets from further dissipation. It has many times been necessary for courts to appoint receivers to prevent further mismanagement or dissipation or diversion of corporate funds or property, in order that the property and assets in their hands might be preserved for the stockholders, but no such situation is presented in this action.

In this case whatever misconduct or mismanagement there was, has long since occurred, that is. has become a final and completed thing, and has resulted in the alleged damage to the plaintiff stockholders, for which upon proper proof they may recover judgment. Here it is not necessary at this time to appoint a general receiver of the Oklahoma Corporation to preserve any assets or properties held by that corporation, for no such assets are held. A receiver in this action is not necessary to preserve or protect the claim of the plaintiffs that the sale and conveyance to the Nevada Corporation is void, because a receiver could not do that in this action, and because no such relief is sought in this action; and because a receiver appointed in this action could not do anything in that regard in any other action which the plaintiffs themselves could not do with equal efficiency without any general receivership of this corporation. Here a general receiver is not necessary as a condition precedent to the testing of the claim of plaintiffs of a right to a money judgment against either or any one of the individual or corporate defendants.

Should there be recovery on the claim of plaintiffs for personal money judgment. or should there be a judgment invalidating the sale and conveyance to the Nevada Corporation, then, and in that event, as it is pointed out, a receiver might be desirable or necessary to receive the fruits of such a judgment and manage or distribute the same, but it would be wholly premature to appoint a receiver at this time for the purpose of providing for either of those future contingencies.

We are impressed with the thought that the trial court must have misunderstood the allegations of mismanagement, and must have concluded that a general receivership was necessary at this time to protect the assets and properties of the Oklahoma Corporation from dissipation by further mismanagement, and did not give sufficient consideration to the fact that in final analysis the purpose of this action is to recover one or more personal money judgments, for alleged specific acts of misconduct, alleged to have resulted in wrongful and unlawful enrichment of the defendants. at the expense of, or to the loss of the Oklahoma Corporation. We are impelled to the conclusion that there was no sufficient proof of need or necessity for a general receivership, or of the existence and possession of property for the receiver to receive, and that the trial court abused its discretion in appointing this general receiver upon the proof presented.

The power to appoint a receiver is a well-recognized power, and it is a power frequently exercised whenever necessary to preserve the status pending litigation or to preserve property or protect property or rights from dissipation pending litigation. But the appointment of a general receiver is in the nature of a harsh remedy and it should not be done except in the case of substantial necessity. Ordinarily a receiver should not be appointed and will not be appointed unless the plaintiff makes a substantial showing that he has rights which will be or may be jeopardized unless a receiver is appointed.

In this case it does not appear that these

plaintiffs will or can lose any right or that any right asserted in this action can be jeopardized by the failure of appointment of a receiver. The plaintiffs can surely present their case and submit their claim of right to the court as well without a receiver as they could with a receiver. If the plaintiffs recover a personal money judgment against one or more of the individual defendants, the collection of those judgments will depend on the solvency of the individual judgment debtors, and that would not in any way be affected by the appointment or nonappointment of a general receiver for the assets of the "Oklahoma Corporation." If the plaintiffs recover judgment impressing a lien upon any specific properties of the individual defendants or of the corporation defendants, the collection of those judgments would ultimately depend on the value of the properties upon which any such lien should be impressed, and that would not be affected in any manner by the appointment or nonappointment of a general receiver of the assets of the "Oklahoma Corporation."

In this action the plaintiffs have not directly attacked the validity of the conveyance of assets to the Nevada Corporation by seeking to vacate that conveyance, which of course they could not do in this action, because neither the Nevada Corporation nor the Oklahoma Corporation is a party to this action. In this action the plaintiffs do refer to the alleged invalidity of that conveyance of assets, but they refer to it here only in so far as it could or will affect their claim for a personal judgment against the individual defendants. If these plaintiffs in any court or in any other action should successfully assail that conveyance, and succeed in setting it aside, and by such adjudication its assets and property should be returned to the Oklahoma Corporation, then, if necessity exists for the appointment of a receiver for such properties and assets to preserve them for these plaintiffs and other stockholders, that relief, that is, the appointment of a receiver, could be had at that time and in that court. So that as to that claim of these plaintiffs there is at this time no showing of present necessity in this action for the appointment of a general receiver of the "Oklahoma Corporation."

In the case of Healy v. Steele, 158 Okla. 194, 13 P.2d 140, this court held in paragraph one of the syllabus:

"The exercise of the power to appoint a receiver is a delicate one, and should be exercised with extreme caution and only under circumstances requiring summary relief or where the court is satisfied that there is imminent danger of loss, lest the injury thereby caused be far greater than the injury sought to be averted."

See, also, Sapulpa Petroleum Co. v. McCrary, 4 F.2d 645, and Jackson v. Ward, 111 Okla. 73, 238 P. 429, cited in that opinion as supporting the above quoted rule.

In the case of Bergman Clay Mfg. Co. v. Bergman, 131 P. 485, the Supreme Court of Washington, in paragraphs 1, 2, 4, 8, and 9 of the syllabus, held as follows:

"The power to appoint a receiver should always be exercised with caution.

"A receiver should not be appointed if there is any other adequate remedy.

"While the first object of a receivership is to preserve the assets, the appointment of a receiver to collect unpaid stock subscriptions of a solvent corporation is unauthorized.

"A minority stockholder has the right to inspect and examine the books and records of the corporation at all reasonable times.

"A paid-up stockholder, knowing of a debt due to the corporation other than upon stock or subscriptions, and showing a refusal of the officers of the corporation to bring suit upon demand, may maintain an action therefor without resort to a receivership."

In the body of that opinion it was pointed out that no receiver was necessary for examination of the books because the stockholder plaintiffs had that right which would be enforced by the court without receivership.

In the body of that opinion it was also pointed out that the plaintiff stockholders could bring a suit against another corporation, for the benefit of their own corporation, without resort to a receivership, and in the body of the opinion that court quoted from its former decision in Frost v. Puget Sound Realty Association, 57 Wash. 629, 107 P. 1029, as follows:

"The tendency to appoint receivers at the instance of those who have, for the hope of greater gain, put their money to speculative uses should be checked rather than encouraged."

In the case of Montana Ranches Co. v. Dolan et ux., 164 P. 306, the Supreme Court of Montana, in paragraphs 1, 2, and 5 of the syllabus, held as follows:

"Under Rev. Codes sec. 6698, as to appointment of receiver, the power is to be exercised sparingly and with unusual caution,

and only to prevent manifest wrong imminently impending, or where there is no other plain, speedy, or adequate remedy.

"The appointment of a receiver will be denied when the applicant has any other adequate remedy.

"Since the remedy by receivership is an extraordinary one, the applicant has the burden of presenting facts sufficient to disclose to the court a necessity for the remedy."

In the body of the opinion that court said:

"The power to invoke the extraordinary remedy by which property is taken into the possession of the court is to be exercised sparingly, with unusual caution, and only to prevent manifest wrong imminently impending, or where the case shows clearly that the complaining party is in danger of suffering irreparable loss and there is no other plain, speedy, or adequate remedy. Where the application is made, as in this instance, before a decision adjudging the title to be in the applicant, the appointment, if made, amounts in effect to a levy of an execution in limine, entailing costs, expenses, and other hardships often out of proportion to the value of the property right sought to be protected. Hickey v. Parrott S. & C. Co., 25 Mont. 164, 64 P. 337. Because of the extraordinary harshness of the remedy, courts of equity have ever been reluctant to apply it. If the applicant has any other adequate remedy, the application will be denied."

In the case of Clark et al. v. National Linseed Oil Co., 105 Fed. 787, the holding of the U. S. Circuit Court of Appeals, Seventh Circuit, is set out in paragraph 2 of the syllabus as follows:

"A bill filed by stockholders owning but 3 per cent. of the stock of a corporation, making general charges of fraud and misconduct against its officers, and verified as to the incriminating part of such charges only on information and belief, is insufficient, treated as an affidavit, to warrant the appointment of a receiver for the corporation against the wishes of the other stockholders, and a specific denial of the alleged misconduct in the answer, which is positively verified by one having knowledge of the facts; and especially where the real purpose of the bill is to secure the appointment of a receiver who will bring suits against the officers and directors in the name and at the expense of the corporation, where complainants, as individuals, have a remedy by suit in their own names to recover for the losses they may have sustained through the frauds and misconduct of the officers."

In the body of that opinion the court used language somewhat applicable to the facts here as follows:

"The purpose underlying the bill is plain. It is to get control, through a receivership, of the appellee's alleged right of action against the directors, so that such suit can be prosecuted in the name of the appellee, and at its expense. It is admitted that the appellants, as individual stockholders, have already a remedy against the directors for whatever loss they have suffered through the supposed frauds and misconduct; but the court is asked, preliminary to such suit, and as a preparation for it, to transfer the control of the corporation from the accused to the accuser, together with the corporation's cash assets available for the sinews of war. The court is, in effect, asked to prejudge the contest, and upon the bill as an affidavit, to give to the appellants the substantial fruits of victory, before the real contest has begun. We are not satisfied that there is a sufficient showing for so important an order."

In the case of Carey v. Dalgarn Const. Co., Inc., 130 So. 344, the Supreme Court of Louisiana considered a case where minority stockholders sued the defendant directors of the corporation to recover sums of money wrongfully received by the individual defendants from the corporation, and sought the appointment of a receiver for the corporation. That court held in paragraphs 4 and 5 of the syllabus as follows:

"Where majority stockholders pay themselves excessive salaries and illegal commission, minority stockholders' remedy is suit to bring funds back to corporation.

"Where complaining stockholder is not without his remedy for acts complained of, courts will not undertake to manage corporation or appoint receiver."

In the body of that opinion it was pointed out that the stockholders could maintain and prosecute their suit without receivership, and as a supporting authority the court cited Russell v. Ice Co., 118 La. 442, 43 So. 44.

And in the body of that opinion the court said:

"We might cite many authorities to the same effect, but these cited are sufficient to show that the complaining stockholder is not without his remedy for the acts complained of to his prejudice, and, where such is the case, courts will not undertake to manage the affairs of the corporation or to liquidate the same by the appointment of a receiver."

See, also, Checotah Hdwe. Co. v. Hensley, 42 Okla. 260, 141 P. 422, and Smith v. Oklahoma Supply Co., 46 Okla. 776, 149 P. 879.

In the case of Hallenborg et al. v. Cobre Grande Copper Co. et al., 74 P. 1052, the Supreme Court of Arizona, in paragraphs 2 and 3 of the syllabus, held as follows:

"Where, in an action for the appointment of a receiver for a corporation by stockholders thereof, it appears that the only purpose of the appointment that would be subserved is the bringing of actions on behalf of the corporation, the appointment of a receiver is properly denied, since plaintiffs could themselves bring the actions without the intervention of a receiver.

"That a receiver of a corporation, being in possession of the books and records thereof, would be in a better position to prosecute actions on its behalf than a stockholder, who might be denied an inspection of the books and records, affords no sufficent ground in itself for the appointment."

In the body of that opinion it was pointed out that the stockholder plaintiffs had the right to maintain actions without having a receiver to maintain them, and that plaintiff stockholders had the right to inspect the books and records of the corporation, which right of inspection would be fully protected and enforced by the court without receivership.

In 23 R. C. L. page 18, paragraph 12, is pointed out the general rule that the cases in which receivers will be appointed are ordinarily limited to those in which it appears that the appointment is necessary either to prevent fraud or to save the property from injury or a threatened loss or destruction, or in the case of necessity to administer the property for the benefit of all persons interested. And it is there pointed out that the mere fact that the appointment of a receiver will do no harm to the defendant is unimportant in determining the necessity for appointment of a receiver.

Of course every application for receiver must prevail or not upon the facts peculiar to that case, therefore general rules governing receiver appointments in other cases can only be applicable by analogy.

As heretofore stated, we deem it unnecessary to decide the controverted question as to the present legal status of the Oklahoma Corporation. This action does not seek the dissolution of the corporation, nor seek to require the individual defendants as statutory trustees to wind up the affairs of the Oklahoma Corporation as in the case of an expired corporation.

It is our conclusion that the evidence presented to the trial court did not justify the appointment of a general receiver, and the order appealed from must be held to have been an abuse of judicial discretion.

The first proposition presented by defendants in error based upon the possible conflict with the jurisdiction and receivership of the federal district court, which might result from the sustaining of this receivership, is presented with some force; but our conclusion here makes it unnecessary that we deal at any further length with that contention.

The order and judgment appealed from is reversed and the cause remanded, with directions to vacate the order appointing receiver.

BAYLESS, C. J., and DANNER, J., having certified their disqualification, Hon. Frank G. Anderson, of Oklahoma City, and Hon. Joe M. Lynch, of Stilwell. were appointed as 'Special Justices in their stead.

CORN and GIBSON, JJ., and ANDERSON, Special Justice, concur. OSBORN, J., concurs specially. DAVISON, J., concurs in conclusion. RILEY and HURST, JJ., and LYNCH, Special Justice, dissent.

OSBORN, J. (concurring specially.) On oral argument attorneys for defendants in error conceded that said action, and such other suits as might properly or necessarily be filed, may be instituted and maintained by the stockholders individually, collectively, or in a representative capacity for the benefit of all the stockholders. Since the action herein involves a claim of damages for malfeasance against the directors, and is not a suit to pursue particular property formerly belonging to the corporation, there is nothing for the receiver to receive until the successful termination of the litigation. I do not intimate an opinion herein whether or not stockholders can maintain an action of this kind, for defendants in error, who procured the appointment of a receiver, assert that they can.

I therefore concur in the opinion of Mr. Vice Chief Justice WELCH in holding that the receiver is unnecessary at this time.

RILEY, J. (dissenting). In Riverside Oil Corporation v. Lynch, 114 Okla. 198, 243 P. 967, we held mismanagement of a corporation constituted a sufficient cause for the appointment of a receiver at the instance of minority stockholders. As the cause at bar is, viewed, that rule should be applied now to such facts as are sufficently alleged and established.

A corporation, in many respects, is analogous to a person; it is created by law for

specific purposes, and may live forever to accomplish its purpose. Indubitably, it should not, for fraudulent ends, be permitted, by a court of equity, to commit suicide without strictly accounting for all value, property, and effects possessed by it at the time of its untimely demise. Waters-Pierce Oil Co. v. State, 47 Tex. Civ. App. 162, 103 S. W. 836, 105 S. W. 851; Id., 107 Tex. 1, 106 S. W. 326; Palmer et al. v. Texas et al., 212 U. S. 118; Baker v. Allen (Mass.) 197 N. E. 521; Bilby v. Morton, 119 Okla. 15, 247 P. 384; Buckley v. Anderson, 137 Ala. 325, 34 So. 238; Exchange Bank v. Bailey, 29 Okla. 246, 116 P. 812.

The majority opinion is predicated upon the false logic that the minority stockholders may right wrongs against them through actions at law. While this contemplates a multiplicity of lawsuits, the regimen of the theory recognizes mismanagement. That fault and wrong should be expected to continue so long as present officers function! They having disemboweled the Oklahoma Corporation and allowed it to die by expiration of its charter, it may be expected that mismanagement or nonmanagement will follow them in their relation with the defunct Oklahoma organization.

In the case first cited this court held, as to replacement of management of a corporation from trustees where a tendency was found in them to convert assets to their own use and benefit:

"We can scarcely conceive of a case where it would be more essential than it is here for the protection of corporate rights, and to permit this corporation to continue under the same management would mean that they would continue to convert the assets to their own use and exercise their own pleasure as to the trust imposed upon them. To allow such a proceeding, it seems to us, would shock the conscience of the most indifferent court. In most cases of this character no other adequate remedy exists."

For these reasons I dissent, and would affirm the judgment of the trial court, finding no abuse in discretion concerning the order whereby a receiver was appointed.

HURST, J. (dissenting). I can see no good reason for reversing the judgment of the trial court. The petition alleges 54 separate acts of misconduct, which if true justify the appointment of a receiver. The acts charged are typical of those too many times committed by persons who have control of corporations, who desire to use the corporations for their own selfish interests at the expense of the minority stockholders. Among the more serious charges are these: That the defendants made secret profits for themselves and members of their families, in large sums, at the expense of the corporation; that they fraudulently transferred many pieces of property, belonging to the corporation, to themselves, members of their families and to corporations owned and controlled by them; that they used approximately $1,000,000 of funds belonging to the corporation in the erection of the Skirvin Tower in Oklahoma City, which is owned by one of the corporations controlled by the defendants; that they fraudulently used funds of the corporation to drill wells for oil and gas purposes on leases belonging to the individual defendants or members of their families, and when the wells proved to be dry, the worthless leases were then transferred to the corporation; that they ran about a million barrels of hot oil belonging to the corporation, at less than the market price, and that defendants made secret profits from such transactions. Finally, it is alleged that the defendants organized the Nevada Corporation just before the charter period of the Oklahoma Corporation was to expire for the purpose of transferring the remaining assets of the Oklahoma Corporation to the Nevada Corporation, and that the transfer was made without the consent of all the stockholders of the Oklahoma Corporation. These serious charges of fraud and misconduct were not denied in an answer or at the trial. They stand proved by the introduction of the verified petition in evidence, which undoubtedly made out a prima facie case. 53 C. J. 64-66.

The question before us is: Did the trial court clearly abuse its discretion in appointing a receiver? It is well settled that an application for the appointment of a receiver is addressed to the sound discretion of the trial court, and the appellate court will not reverse a judgment appointing or refusing to appoint a receiver unless the record shows a clear abuse of discretion. McDonald v. Bohling (1924) 102 Okla. 243, 228 P. 783; Ellis v. Panther Oil & Gas Co. (1935) 171 Okla. 552, 43 P.2d 423; Boynton Gas & Electric Co. v. Mosier (1937) 179 Okla. 232, 65 P.2d 448; 23 R. C. L. 10; 53 C. J. 34. This is the rule that should guide us.

The authorities relied on by the majority opinion are primarily for the guidance of the trial court, and no doubt the rules therein stated were considered by the trial

judge. In six of the cases relied on, the trial courts had refused to appoint receivers and it was simply held that no abuse of discretion was shown. I think correct conclusions were reached in the four where judgments appointing receivers were reversed. The Frost Case (107 P. 1029) was prosecuted at the instance of a discharged employee who, "without apparent excuse, has endeavored to destroy their (the investor's) confidence in appellant, a proceeding that should receive no encouragement from a court of equity," and it was held that the evidence "shows solvency, careful and capable business management under existing conditions." The Bergman Case (131 P. 485) was prosecuted by the president of the corporation, who admitted his own neglect of duty in that he knew nothing of its business affairs and the acts charged to be wrongful, with knowledge of which the law charged him. No fraud was charged, and it was held that he had an adequate remedy at law. In the McCray Case (4 F.2d 645) it was found that the plaintiff probably "cannot ultimately recover either at law or in equity in this case, and that this litigation ought to cease." In these three cases receivers were asked for going corporations, and it was held that an abuse of discretion was shown in appointing the receivers. The Jackson Case (111 Okla. 73, 238 P. 429) was between two individuals and involved ownership of some land, and the order appointing the receiver was reversed because the plaintiff had not shown that he would probably ultimately recover.

None of the cases relied upon in the majority opinion involves a state of facts comparable to those involved in the instant case. The rules stated in those cases, quoted in the majority opinion, must be read in connection with the facts there involved. I am convinced that they do not sustain a reversal here.

On the expiration of the charter of the Oklahoma Corporation the defendants became trustees of its creditors and stockholders under section 9788, O. S. 1931 (18 Okla. St. Ann. sec. 163). Where sufficent cause exists, a receiver may be appointed to displace such statutory trustees. Fletcher, Cyclopedia Private Corporations, sec. 8202; 54 A. L. R. 1134.

True, there are no physical assets in the hands of the trustees, but if the allegations of the petition are true, as found by the trial court, the Oklahoma Corporation has numerous causes of action to recover back property and assets that have

been fraudulently and unlawfully transferred. They have a cause of action to present to the federal court for the return of assets unlawfully transferred to the Nevada Corporation, the transfer being invalid because not consented to by all the stockholders. 14 C. J. 866. Such rights of action constitute assets justifying the appointment of a receiver. See Clark on Receivers, vol. 1, p. 66, sec. 57; Dalsheimer v. Graphic Arts Co. (1916, N. J. Eq.) 97 Atl. 497. In the last-named case the appointment of a receiver of a New Jersey corporation was sustained to the end that he might sue for the return of assets unlawfully transferred to a Delaware corporation by the same name and organized for the purpose of taking over all the assets of the New Jersey corporation and continuing the business. The decision supports the appointment of a receiver in the instant case. The court used this language, which is pertinent to the issues in the instant case:

"It seems clear, therefore, that the only practicable relief which can be afforded is the appointment of a receiver of the New Jersey corporation, which is now in an insolvent condition, to the end that the receiver may pursue such remedies as are open to him to restore to the New Jersey corporation for the benefit of its creditors and stockholders the property and property rights which have been unlawfully withdrawn from it."

The trial court was evidently of the opinion that a receiver acting under his orders could more effectively recover for the benefit of the stockholders of the Oklahoma Corporation the assets that had been unlawfully transferred than could the minority stockholders scattered over the country. The receiver would be entitled to possession of the books, records, and papers of the Oklahoma Corporation which would enable him to better prepare and try the cases that should be filed for the return of assets. It the receiver fails to secure the return of assets, the possession of the books by the receiver cannot injure the defendants.

The fact that after the appointment of the receiver in the instant case the federal district court also appointed a receiver of the assets of the Oklahoma Corporation is immaterial. By appointing the receiver, the state district court acquired prior jurisdiction of the res. The filing of the appeal with supersedeas did not divest the state court of its jurisdiction, but merely suspended the enforcement of the order appointing the receiver. Section 780, O. S.

1931; Cameron v. White (1928) 128 Okla. 251, 262 P. 664; International Chiropractic Congress v. Johnston (1935) 174 Okla. 567, 50 P.2d 1115; Waters-Pierce Oil Co. v. State (1907, Tex. Civ. App.) 103 S. W. 836 (companion case to Palmer v. State of Texas, infra); 3 Am. Jur. 194, sec. 532. On the conflict of jurisdiction being called to the attention of the federal district court, I assume it would recognize the prior jurisdiction of the state district court, as would be its duty under the above authorities and the case of Palmer v. State of Texas and Robert J. Eckhart, Receiver of Waters-Pierce Oil Co. (1909) 212 U. S. 118, which case involves a state of facts practically identical with those involved in this case.

I agree with the majority that courts should exercise caution in appointing receivers, especially of going concerns. Too often designing persons seek by receivership actions to get control of concerns for selfish purposes, and not to aid those beneficially interested. It does not appear that this is one of those cases, and I do not believe this is a proper case for this court to show its displeasure at such evils. The fact that actions to recover back the secret profits made by defendants and assets unlawfully transferred may be prosecuted by the minority stockholders is no reason why we should hold that there was an abuse of discretion in appointing the receiver. See Dalsheimer v. Graphic Arts Co., supra. Whether those actions are prosecuted by the minority stockholders or a receiver, the minority stockholders will in any event be compelled to finance them until the assets are recovered. If no assets are recovered, the costs of receivership would be borne by the minority stockholders.

Since I think there is no basis on which to rest a finding that the trial court abused its discretion in appointing the receiver, I respectfully dissent to the majority opinion.

Special Justice LYNCH concurs in this dissent.

On Petition for Rehearing.

DAVISON, J. (concurring specially). I concur in the conclusion announced by a majority of my associates. However, I am of the opinion that controlling rather than incidental importance should be attached to the basis of the action and the nature of the redress sought. In this respect my views coincide with the views of Mr. Justice Osborn as expressed in his specially concurring opinion.

It is pointed out in the majority opinion that "in the final analysis the purpose of the action is to recover one or more personal money judgments for alleged specific acts of misconduct alleged to have resulted in wrongful and unlawful enrichments of the defendants." The situation thus epitomized and which characterizes plaintiffs as claimants whose demands sound in tort is in my judgment entitled to controlling weight.

While the rules in connection with receiverships admit of a degree of flexibility subject to be exercised in accord with judicial discretion, certain general principles prevail which should apply in the absence of circumstances requiring the recognition of exceptions. Generally, in order to justify the appointment of a receiver, a petitioner must establish a legal right to the property in himself or that he has a lien thereon or that it constitutes a special fund out of which he is entitled to satisfy his demand (23 R. C. L. p. 15, par. 9), and even in jurisdictions where by statute a simple creditor without a lien may, under specified circumstances, petition for the appointment of a receiver (consider section 773, O. S. 1931, 12 Okla. St. Ann. § 1551), such relief is not usually available to a creditor whose demand sounds in tort, as do the claims herein presented. 23 R. C. L. page 17, par. 10.

I therefore concur in the conclusion vacating the appointment of a receiver.