**COYLE et al. v. SKIRVIN et al.**

No. 2074.

District Court, W. D. Oklahoma.
April 7, 1941.

Harve L. Melton, of Oklahoma City, Okl., Anderson & Ford, of Amarillo, Tex., and Kerr & Lambert, of Ada, Okl., for plaintiffs.

John H. Shirk (of Shirk, Earnheart, Grigsby & Shirk), Roy C. Lytle (of Keaton, Wells & Johnston) both of Oklahoma City, Okl., and Fred P. Branson, of Muskogee, Okl., for defendants.

VAUGHT, District Judge.

This matter is before the court on motions filed by various defendants to dismiss plaintiffs' second amended complaint.

The second amended complaint consists of 88 pages of subject matter and 62 pages of exhibits, or a total of approximately 150 pages. The briefs of the defendants consist of approximately 150 pages, while the plaintiffs' briefs consist of 170 pages. Prior to the filing of the second amended complaint, the plaintiffs had filed an amended and supplemental complaint, which was even more voluminous than the second amended complaint.

The second amended complaint discloses that the American Oil & Refining Company, an Oklahoma corporation, which hereafter will be referred to as the "Old Oklahoma Corporation" was organized in February, 1916 by W. B. Skirvin, M. A. Luty, L. H. Prichard, and others; that the

purpose of the corporation was to purchase, lease, option, locate, or otherwise mortgage, hypothecate, and deal in oil lands and oil and gas leases, mines, mining claims, mineral lands, coal lands, et cetera. In fact, the corporation was given power and authority to engage in almost any line of business in which a corporation could engage, under the laws of Oklahoma, but it was engaged principally in the purchase and sale of oil and gas lands, leases, and the production of oil and gas therefrom. This corporation continued as an active organization until its charter expired by statutory limitation in 1936. It was the desire of the corporation to reincorporate as a foreign corporation, and in May, 1934, there was incorporated the American Oil & Refining Company, a Nevada corporation, which hereafter will be referred to as the "Nevada Corporation."

Under the laws of Oklahoma, a domestic corporation could incorporate as a foreign corporation only with the consent of its stockholders, and it is admitted that the laws of Oklahoma were not complied with in that particular, for the reason that a small minority of the stockholders did not consent to the organization of the Nevada Corporation.

However, from its organization in May, 1934, to April 25, 1938, the Nevada Corporation had possession of all of the properties belonging to the Old Oklahoma Corporation and continued their operation in the same manner as they theretofore had been operated.

On the 19th of March, 1938, an action was filed in the United States District Court for the Western District of Oklahoma entitled Globe Pipe Line Company, a Corporation v. American Oil & Refining Company, a Corporation, and W. B. Skirvin, Number 2050. In this suit the Globe Pipe Line Company asked for the appointment of a receiver of all of the properties in the hands of the Nevada Corporation and on the 19th of March, 1938, A. C. Fletcher was appointed receiver of said company and said properties by Honorable Alfred P. Murrah, one of the judges of this District. The order appointing the receiver provided that, upon filing of the required bond, the receiver should proceed to take possession of all of the property and assets of the defendant American Oil & Refining Company, wherever situated, and collect, hold and manage the assets and to run and operate

the said American Oil & Refining Company as the same was then operated, keeping the premises and the property, both real and personal, in good condition and repair, to the end that said American Oil & Refining Company be operated efficiently and with safety to the public. And further, "to defend all actions that may hereafter be brought against the said company, or against him as such receiver, by the permission of this court, and to pay the expenses of such prosecution and defense, et cetera." The order concluded with the following paragraph: "All persons, firms, or corporations are hereby enjoined from filing any claim or action in law or equity against said American Oil & Refining Company, said receiver, and/or the properties involved herein, except in this court and in this cause, and after permission has been obtained therefor."

On April 11, 1938, this action was filed in the District Court of Oklahoma County. The plaintiffs were B. W. Coyle and numerous other minority stockholders. It named as defendants, W. B. Skirvin, individually and as president; O. W. Skirvin, individually and as vice-president; M. A. Luty, individually and as secretary-treasurer; Ellsworth Jordan and F. C. Wallower, individually and as members of the Board of Directors, respectively, of American Oil & Refining Company, an Oklahoma corporation; Mrs. Pearl R. Mesta and Mrs. George Tyson, formerly Mrs. M. S. Adams, and Texahoma Realty Company, Skirvin Operating Company, Skirvin Hotel, Inc., and Broadway Development Company, all Oklahoma corporations. The plaintiffs alleged that the defendants, as officers and directors of said corporation, from the date of its organization in 1916 to and including 1934, had engaged in various fraudulent transactions and schemes whereby said corporation was divested of certain properties for the special benefit of said defendants; that said defendants had at various times entered into contracts for the acquisition of property, under the guise of being officials of said corporation and that said contracts were for the corporation, when in fact said properties were transferred to and used by said defendants for their own benefit; that at the time of the organization of said corporation, an advertising campaign was carried on with an elaborate prospectus, which was circulated widely and which contained a statement that the officers and

directors of the corporation would not draw salaries until dividends had been received by the stockholders equaling the par value of their stock; that said prospectus further provided that 50 per cent. of the net earnings, as they accrued, would be placed in a dividend fund and distributed to all stockholders of record, said payments to begin on the first Monday in June, 1917; that said representations were disregarded by the officers and directors of said corporation; that said officers and directors drew salaries from 1916 to the time that this suit was filed; that all the acts of said defendants, as alleged in the complaint, constituted illegal conversions to the extent of "several hundred thousand dollars", and that said corporation and plaintiffs, as stockholders, were damaged to that extent and said defendants were to the same extent enriched. The complaint challenged the right of said corporation to transfer its assets to the Nevada Corporation and alleged said act as one of the grounds for recovery by said plaintiffs, and prayed for the appointment of a receiver for all properties belonging to the American Oil & Refining Company, and for other relief.

On April 14, 1938, Judge E. L. Lester was appointed receiver and qualified by taking the oath and filing his bond. Thereafter, on May 10, 1938, an appeal was taken to the State Supreme Court from the order appointing Judge Lester receiver.

On May 11, 1938, certain of the defendants filed a petition and the statutory bond to remove said cause to this court. The petition to remove was denied by the state district court and, thereafter, on May 24, 1938, a transcript of the proceedings in the state court was filed in this court and given its present number, 2074.

At the time the appeal was taken to the State Supreme Court from the order appointing Judge Lester receiver, a supersedeas bond was filed, and notwithstanding the cause had been removed to the federal court, both parties proceeded with the appeal in the State Supreme Court. The Supreme Court rendered an opinion reversing the lower court and holding that the appointment of the receiver was void. In the second petition for rehearing, it was suggested to the Supreme Court for the first time that the cause had been removed to the federal court.

In the meantime, the receiver appointed by the state court had not taken possession of any of the property belonging to any of the defendants, but the property sought to be placed in his custody was in the actual custody of the federal court receiver in Cause Number 2050, and had been since March 19, 1938.

On the 25th of April, 1938, the officers and directors of the Old Oklahoma Corporation filed amended articles of incorporation for the purpose of reviving said corporation, under the laws of the state of Oklahoma, specifically stating, "these amended articles of incorporation are filed under Section 9713, Oklahoma Statutes of 1931, 18 Okl.St.Ann. § 1, and Section 9732, Oklahoma Statutes of 1931, as amended Art. 2, Chap. 46, Session Acts of 1935, 18 Okl.St.Ann. § 17, * * * to extend the life of said Corporation as hereinbefore set out, as authorized by the laws of the State of Oklahoma."

It is the contention of the defendants that the Nevada Corporation was organized in good faith and upon the advice and counsel of attorneys, but when the matter was given further consideration and the question was raised as to the validity of the transfer of the assets of the Old Oklahoma Corporation to the Nevada Corporation (it appearing that a minority of the stockholders of the Old Oklahoma Corporation did not consent to the transfer), steps were taken to revive the Old Oklahoma Corporation, as provided by the Oklahoma Statutes. After the revivor proceedings were had, by filing the amended articles of incorporation for the Old Oklahoma Corporation and the revived corporation became effective, the plaintiff in Cause Number 2050 in this court filed an amended petition setting forth the fact that said Old Oklahoma Corporation had been revived under the same name and, therefore, it prayed that the receivership then existing in this court in said cause be extended to and include the property then in possession of the receiver, as the property of the new Oklahoma corporation. The court thereupon extended the receivership to include the revived corporation. The Oklahoma corporation as revived hereafter will be referred to as the "New Oklahoma Corporation."

The motions to dismiss allege, (1) that the plaintiffs have failed to allege such facts as to each plaintiff, as are required by subdivision (b) of Rule 23 of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. follow-

ing section 723c; (2) that since a receiver appointed in Cause Number 2050 had in his possession and under his control all of the properties formerly belonging to the Old Oklahoma Corporation and which had been in the possession of and operated by the Nevada Corporation, there was no occasion for the appointment of another receiver, since there would be a conflict of the authority of these receivers over the same property; (3) that the plaintiffs had no capacity or authority to institute, prosecute or maintain this action against the various defendants; (4) that there is a misjoinder of attempted causes of action or counts; (5) that the causes of action alleged under the various counts of the second amended bill, even though the plaintiffs had a right to maintain said actions, are barred by the statute of limitations; (6) that any cause of action contained in said second amended complaint, not barred by the statute of limitations, could be brought only by the corporation itself, and that the plaintiffs, as minority stockholders, are without authority in law to institute or maintain such actions.

The first proposition to be considered is whether or not the appointment of a receiver by the state court should be approved by this court, and since said receiver so appointed by the state court, pending this trial, has departed this life, should this court appoint a successor, when a receiver had been appointed by the same court for the same property in Cause Number 2050 prior to the institution of the action by these plaintiffs in the state court.

It is admitted by the defendants, as contended by the plaintiffs, that the attempted transfer of the property of the Old Oklahoma Corporation to the Nevada Corporation was illegal. However, from the time the Old Oklahoma Corporation expired in 1936 until its revivor in April, 1938, the actual possession and control of all assets belonging to the Old Oklahoma Corporation vested either in the Nevada Corporation or in the Board of Directors of the Old Oklahoma Corporation as trustees. It is immaterial where the legal title vested, since the property itself actually was taken into the custody and control of the receiver in Cause Number 2050. The custody and control of the property was in this first-named receiver at the time the plaintiffs filed their action in the state court. The state court receiver, it is admitted, did not take control or possession of any of the assets which he was directed to take control of by the state court.

Article 1, Chapter 3, Session Laws of Oklahoma, 1935, 12 Okl.St.Ann. § 1558, provides:

"Section 780, Oklahoma Statutes, 1931, is hereby amended to read as follows:

"Section 780. In all cases in the district or superior court, in which a receiver may be appointed, or refused, the party aggrieved may, within thirty days thereafter, appeal from the order of the court, or a judge thereof, refusing to appoint, or refusing to vacate the appointment of a receiver, to the Supreme Court, without awaiting the final determination of such cause, and in cases where a receiver shall be, or has been, appointed, upon the appellant filing an appeal bond, with sufficient surety, in such sum as may have been required of such receiver by a court or the judge thereof, conditioned for the due prosecution of such appeal and the payment of all costs or damages that may accrue to the State, or any officer or person by reason thereof, the authority of such receiver shall be suspended until the final determination of such appeal, and if such receiver shall have taken possession of any property, real or personal, the same shall be returned and surrendered over to the appellant, upon the filing and approval of said bonds. The right of appeal herein provided for shall obtain in and be applicable to any and all actions now pending or which may hereafter be instituted pursuant to any statutory provisions, general or special."

It is apparent that when this cause was removed to the federal court, the receiver in the state court had no power to act because an appeal had been filed from the order appointing the receiver in the state court, and a supersedeas bond filed before removal proceedings were filed.

It is true that the cause came to this court as it left the state court. As stated above, this receiver had not taken into his possession the assets of the Old Oklahoma Corporation and at the last hearing in this cause, it was disclosed to the court that prior thereto and on July 25, 1940, the receiver, Judge E. L. Lester, had departed this life.

Whether jurisdiction remained in the state court to determine the status of the receiver is open to argument, but both the

plaintiffs and the defendants briefed and argued the cause in the Supreme Court and the plaintiffs in this cause filed a second petition for rehearing, when for the first time it was made known to the Supreme Court that the cause had been removed to the federal court. The opinion of the Supreme Court is reported as Skirvin et al. v. Coyle et al., 185 Okl. 487, 94 P.2d 234, 236, and in that opinion the court said: "As heretofore pointed out these assets now held by the Nevada Corporation are in receivership and in custody of the receiver in federal court. If these plaintiffs desire to attack the transfer of assets to the Nevada Corporation, surely it will be necessary that they do so in some action in which the Nevada Corporation is a party. Perhaps at the present time it would be necessary for them to so proceed either in the federal court having charge of the receivership or proceed. otherwise by permission of that federal court having charge through receivership."

■ That the Nevada Corporation, at the time of the filing of the first suit in federal court (Cause Number 2050), had possession and control of all of the assets of the Old Oklahoma Corporation is not questioned. As to whether or not its control was legal, was questionable but, in order to take the property out of the possession of the Nevada Corporation, some proceeding was necessary, just as indicated by the Supreme Court of Oklahoma. The actual possession of the assets by the Nevada Corporation is admitted, but the plaintiffs contend it had no right to such possession because the transfer was illegal. That may be admitted, but the Nevada Corporation had actual possession of the assets at the time the receiver was appointed in the federal court in Cause Number 2050 and, at that time, the federal court took possession of the assets and placed them in the hands of A. C. Fletcher, as receiver. This court concurs in the conclusion reached by the Supreme Court of Oklahoma, that the appointment of Lester as receiver was without authority of law, therefore, since the assets are in the hands of a receiver appointed by this court, there would be no object in appointing another receiver by this court to take possession of the same property.

The next question is whether or not the plaintiffs had the legal right to institute this action.

In Klein v. Peter, 8 Cir., 284 F. 797, 799, 29 A.L.R. 1497, there was involved a situation where a state court had appointed a receiver and where stockholders subsequently attempted to institute and maintain an action in the federal court against directors for their fraudulent conduct. The stockholders not having obtained the sanction of the state court, it was held that the action would not lie in the federal court. In the opinion, written by Circuit Judge Kenyon of the Eighth Circuit, reference is made to Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815, in which the Supreme Court said: "'When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate; the possession of the receiver is the possession of the court; and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it.'"

The conclusion of the court in the Klein case is stated in the headnote as follows:

"Suit could not be maintained in the federal court by stockholders against directors for fraudulent conduct, where the corporation was in the hands of a receiver of the court of the state of the corporation's organization, and such court had refused application to have the receiver bring such suit.

"Generally, where a corporation is in the hands of a receiver, a stockholder cannot sue directors for maladministration without the sanction of the court appointing the receiver, nor can such a suit be maintained, even where the court has granted its permission, where there is no order purporting to assign to the plaintiff stockholder or to confer on him the right to enforce the claim vested in the receiver; the right of action by the receiver being exclusive."

It is not alleged in plaintiffs' complaint that a request had been made of the corporation itself to institute this action nor, since the receiver had been appointed for the assets of the old corporation, that a request had been made of the receiver to bring such action. See Rules of Civil Procedure for the District Courts of the United States, Rule 23(b), and Kelly v. Dolan et al., D.C., 218 F. 966.

In Long et al. v. Stites et al., 6 Cir., 88 F.2d 554, 555, the court held, quoting from

the fifth syllabus: "Minority stockholders who alleged no demand on corporation's receiver, whose appointment was matter of public record, to sue directors for permitting alleged illegal investments held not entitled to maintain suit against reorganized corporation, old and present directors, since receiver was proper party to attack old directors' illegal acts, if any, and stockholders did not exhaust every remedy within corporation as required by equity rule (Equity Rule 27, 28 U.S.C.A. following section 723 [28 U.S.C.A. § 723, Appendix])."

And quoting from the body of the opinion in that case: "In addition, it is the spirit of the rule as repeatedly interpreted in federal decisions that stockholders bringing a derivative action shall exhaust every remedy within the corporation before suing the directors on causes of action which in the first instance should be asserted by the corporation. Quincy v. Steel, 120 U.S. 241, 7 S.Ct. 520, 30 L.Ed. 624; Wathen v. Jackson Oil & Refining Co., 235 U.S. 635, 35 S.Ct. 225, 59 L.Ed. 395; Stone v. Holly Hill Fruit Products, Inc. [5 Cir.], 56 F.(2d) 553. Cf. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 317, 56 S.Ct. 466, 80 L.Ed. 688. While the record does not show the precise period of the receivership, The Trust Company, for a considerable time was administered by a receiver, whose appointment was a matter of public record. The bill sets forth no demand made upon the receiver to sue the old directors during the period of the receivership, although obviously the receiver was the proper party to have attacked the illegal acts, if any, performed by the old directors."

In the earlier cases, the necessity was emphasized that the stockholder must show not only a demand on the receiver that he sue, but if the receiver refuse, that he had asked the court which appointed said receiver, to direct said receiver to sue.

In Swope v. Villard, C.C., 61 F. 417, 421, the court said: "Another fatal defect of the bill is that it does not show that the court which appointed the receivers has given the complainant leave to sue them. If the effect of the appointment of the receivers was such as appears from the bill, and was assumed or conceded on the argument, these receivers are indispensable parties; and the decision of the supreme court in Porter v. Sabin, 149 U. S. [473] 478, 13 S.Ct. 1008 [37 L.Ed. 815], is conclusive."

In Ames v. American Telephone & Telegraph Co., C.C., 166 F. 820, 824, the court said: "It is not necessary, however, to speculate as to the possibilities and as to the conceivable right of stockholders to maintain individual actions. It is enough to say that the wrongs here alleged are to the corporation, that to admit any other line of proof would be to go outside of the declaration, and that the proper guidance of the court should be exercised, not in distinguishing relevant and irrelevant issues at the trial, but by rulings on demurrer which will determine the orderly course of the trial."

When this action was filed in the state court, the Nevada Corporation was not made a party to the suit and has not been made a party to the suit even after removal to this court.

In Reagan v. Midland Packing Co. et al., 8 F.2d 954, 955, from the Eighth Circuit (Judges Lewis and Phillips, now of the Tenth Circuit Court of Appeals, participating), a very similar case is discussed. In that case, a judgment creditor, whose claim against the corporation had been allowed, attempted to maintain suits for the collection of unpaid stock subscriptions after a general receiver had been appointed for winding up the affairs of the corporation, and the court held that the unpaid stock subscriptions constituted assets of the company, on which the receiver alone was entitled to maintain a suit, and that the trial court was correct in dismissing the creditor's bill. The court said:

"Motions to dismiss the bill upon various grounds were made by a number of the individual defendants. The court sustained the motions, upon the ground that the sole right to maintain suit for collection of unpaid stock subscriptions rested in the receiver appointed by the court. We think the ruling was right.

\* \* \* \* \*

"The overwhelming weight of authority is that, after the appointment of a general receiver for the purpose of winding up the affairs of a corporation, or after the appointment of a trustee in bankruptcy, such officer has the sole and exclusive right to maintain suits for the collection of unpaid stock subscriptions."

Even though the plaintiffs had the right to institute such an action, their right to recover, based upon acts occurring from 1916 to 1934, would be barred by the statute of limitations, and the item of salaries received by the officers of the corporation since 1934 would be a claim which could be prosecuted only by the corporation itself, but since at the time of the filing of this action, a receiver had been appointed for the assets of the corporation, such action could be maintained only by the receiver.

This court, therefore, has reached the following conclusions:

1. That in Cause Number 2050, filed in this court, the court had jurisdiction of the parties, and the res involved in the instant suit, and that upon the appointment of a receiver, this court had exclusive jurisdiction of all assets formerly belonging to the Old Oklahoma Corporation, which were transferred, either legally or illegally, to the Nevada Corporation and were in the custody of the Nevada Corporation at the time of the institution of said suit.

2. That the state court had no authority to appoint a receiver for the assets of the Old Oklahoma Corporation then in the custody of the Nevada Corporation, since the federal court had taken jurisdiction and appointed a receiver for the same assets, and that at the time the suit was filed in the state court, the jurisdiction of the federal court was exclusive, and as determined by the State Supreme Court, the appointment of said receiver in the state court was void.

3. That the state court was without jurisdiction to entertain the instant action.

4. That the minority stockholders were without authority of law to institute and maintain the action in the state court, since the right, at that time, to institute said suit was vested solely in the receiver of this court in Cause Number 2050.

5. That while it is not necessary, in view of the foregoing conclusions, to determine whether or not the statute of limitations is a bar to actions based upon transactions occurring between 1916 and 1934, yet the conclusion that they are barred by the statute of limitations is apparent on their face.

The motions to dismiss, therefore, are sustained and exceptions allowed.